ATTORNEY GENERAL, *ex rel.* COMMISSIONER OF INSUR-
ANCE, *v.* LAPEER FARMERS' MUTUAL FIRE INSURANCE
ASSOCIATION.
APPEAL OF WARNER.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—SAVING RIGHT OF
ACTION—RECEIVERSHIP.
Where decree approving plan for termination of 11½-year-old
receivership preserved right of nonassenting creditors and dis-
satisfied members of mutual fire insurance association who
have paid their assessments in full to · proceed against all
receivers and deputy receivers except the present receiver, his
deputy or trustees under the plan, the question of whether an
insurance commissioner, acting in his capacity as a statutory
receiver of the association, is, liable for a possible mistake of
judgment in not having gone to the expense of bringing suit
against officers and. directors of the insolvent company when
it appeared that chances of recovery were most remote is
academic.

2. INSURANCE—RECEIVERS—POWERS—COURT RULES.
Court rule applicable to receiver in a suit upon a creditor's bill
is not applicable to the receiver of an insurance company
whose rights and duties are defined by statute (3 Comp.
Laws 1929, § 12269).

3. SAME—TERMINATION OF RECEIVERSHIP—PUBLIC SALE OF ASSETS.
Decree authorizing receiver to transfer assets of insolvent mutual
' fire insurance association to creditors' trustees for distribution
is modified to compel the trustees to proceed to public sale of
such assets pursuant to published notice of date and place as
determined by trial judge, in order to insure highest return
possible (3 Comp. Laws 1929, § 12269).

4. SAME—TRUSTEES FOR CREDITORS—BONDS—JURISDICTION OF COURT.
Proposed creditors' trustees to whom assets of receivership of
mutual fire insurance association were to be transferred upon

termination were not to be disqualified from handling money of nonassenting creditors because of alleged hostility of one of the trustees toward such creditors and conduct of another of the trustees in an entirely different matter where the trustees have been ordered to give their individual bonds and trial court retains jurisdiction over their activities (3 Comp. Laws 1929, § 12269).

5. SAME—TRUST FOR BENEFIT OF CREDITORS—EQUITY—TERMINATION OF RECEIVERSHIP.

Trust plan for terminating 11½-year-old receivership of mutual fire insurance association which provided that if the moneys collected in the aggregate shall be unacceptable to all the creditors as full payment of their claim, then each member shall have returned to him the amount he has contributed, and that unless a large number indicate their desire to withdraw at once the agreement shall be binding upon such members as have paid the full 150 per cent. of their original assessment and for cancellation of the agreement without prejudice to presentation of an application to trial court for an order following in the main the provisions of the same agreement *held,* to have equitably protected rights of all parties concerned and to have feasibly provided a method to salvage something for creditors (3 Comp. Laws 1929, § 12263 *et seq.*).

6. SAME—TERMINATION OF RECEIVERSHIP—DISTRIBUTION OF AS- SETS TO CREDITORS.

Decree which would terminate an 11½-year-old receivership of mutual fire insurance association by approval of plan for transfer of assets to creditors' trustees was not objectionable on ground that it did not order trustees to distribute as- sets to creditors, since such distribution is implicit and ade- quately safeguarded where court retained jurisdiction and supervision over activities of the trustees (3 Comp. Laws 1929, § 12263 *et seq.*).

7. SAME—COMMISSIONER AS OBLIGEE OF BONDS OF CREDITORS' TRUSTEES.

Commissioner of insurance was properly designated as obligee in bonds of creditors' trustees to whom decree authorized commissioner, as receiver of mutual fire insurance associa- tion, to turn over assets and be automatically discharged as receiver upon performance of such duty (3 Comp. Laws 1929, § 12263 *et seq.*).

8. SAME—DISCHARGE OF RECEIVER—FINAL ACCOUNT—NOTICE—
HEARING.

Decree, approving plan for termination of 11½-year-old re-
ceivership of mutual fire insurance association, wherein it was
set forth that receiver should be automatically discharged
after he had transferred assets to creditors' trustees and
filed his final account was not objectionable since such final
account would be acceptable to the court only after proper
notice to interested parties who would have an opportunity
to be heard thereon (3 Comp. Laws 1929, § 12263 et seq.).

9. SAME—LIQUIDATION—STATUTES.

Purpose of statute providing for liquidation of insurance com-
panies by and under the direction of the insurance commis-
sioner is to provide for efficient liquidation of such com-
panies with the least possible delay (3 Comp. Laws 1929,
§ 12266).

10. SAME—LIQUIDATION—TERMINATION OF RECEIVERSHIP BY
TRANSFER OF ASSETS TO CREDITORS' TRUSTEES.

Where decree relative to termination of the receivership of a
mutual fire insurance association provided for transfer of as-
sets to creditors' trustees, such transfer in consideration of
the discharge of their claims effected liquidation of the asso-
ciation, hence did not permit some one other than the commis-
sioner or his deputy to act as liquidator (3 Comp. Laws 1929,
§ 12266).

11. SAME—IMPAIRMENT OF CONTRACT—CREDITORS' TRUSTEES—RE-
CEIVERS—FINAL ACCOUNT.

Approval of decree for termination of long-standing receivership
of mutual fire insurance association by permitting transfer of
assets to creditors' trustees subject to continued supervision
of court did not impair contract rights of nonconsenting credi-
tors by attempting to substitute the trustees for the insurance
commissioner as the statutory liquidator as his discharge as
receiver is contingent upon filing a final account on which a
hearing shall be had after due notice to interested parties
(3 Comp. Laws 1929, § 12263 et seq.).

12. JUDGES—DISQUALIFICATION—FORMER ATTORNEY FOR JUDGMENT
CREDITOR OF INSURANCE ASSOCIATION.

Claim that judge who approved plan for termination of long-
standing receivership of mutual fire insurance association and
who had been a member of a firm which served as general
counsel for a judgment creditor was disqualified held, without
merit, where such creditor's claim was in the amount of

$198.70, as compared with total creditors' claims of more than
$94,000, and has already been reduced to judgment (3 Comp.
Laws 1929, § 12263 *et seq.*).

**13. COSTS—FAILURE OF EITHER PARTY TO PREVAIL.**
No costs are allowed on appeal where neither of the parties
thereto have fully prevailed.

Appeal from Ingham; Eger (Paul G.), J. Submitted March 24, 1947. (Docket No. 77, Calendar No. 43,557.) Decided May 16, 1947. Rehearing denied June 27, 1947. Reconsideration denied July 31, 1947.

Petition by David A. Forbes, Commissioner of Insurance, for authority to sell assets of Lapeer Farmers' Mutual Fire Insurance Association to trustees for creditors and for discharge of receiver. Charles Warner and others objected to the petition. Decree for the petitioner. Objectors appeal. Modified and affirmed.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Maurice M. Moule,* Assistant Attorney General, for the petitioner.

*Roger J. Vaughn,* for objectors.

BUTZEL, J. In June, 1934, two examiners of the department of insurance reported to the commissioner of insurance for the State of Michigan that a partial examination of the books and records of the Lapeer Farmers' Mutual Fire Insurance Association, hereinafter referred to as the association, revealed that the business of that company was being conducted improperly. They recommended a thorough reorganization. A similar report was made in June, 1935. On August 19, 1935, at a special meeting, the board of directors of the association passed a resolution directing the secretary to petition the commissioner of insurance to take

charge of the affairs of the association. On September 6, 1935, the attorney general upon relation of the commissioner of insurance filed a bill of complaint in the circuit court for the county of Ingham, in chancery, to dissolve the association and place it in the hands of a receiver. On September 17, 1935, an order was entered appointing John C. Ketcham, commissioner of insurance, receiver of the association and directing him to collect the assets and liquidate the association in accordance with statutory provisions (3 Comp. Laws 1929, § 12263 *et seq.*, as amended [Stat. Ann. 1943 Rev. §§ 24.40–24.48]) and under the direction and supervision of the court. A supplemental order was entered on September 30, 1935, appointing William G. Simpson deputy receiver of the association with similar instructions from the court. The supplemental order fixed the deputy receiver's bond at $10,000.

In the 11½ years since this receivership was instituted, litigation involving the association has been before this Court eight times (*Simpson v. Goodrich*, 280 Mich. 351; *In re Dissolution of Lapeer Farmers Mutual Fire Insurance Association (Claim of Crawford)*, 280 Mich. 363; *In re Dissolution of Lapeer Farmers' Mutual Fire Insurance Association (Claim of Rice)*, 295 Mich. 218; *Attorney General, ex rel. Commissioner of Insurance, v. Lapeer Farmers Mutual Fire Ins. Ass'n (West's Appeal re Assessment)*, 297 Mich. 174; *Attorney General, ex rel. Commissioner of Insurance, v. Lapeer Farmers Mutual Fire Ins. Ass'n (Claim of Ivory)*, 297 Mich. 188; *Attorney General, ex rel. Commissioner of Insurance, v. Lapeer Farmers Mutual Fire Ins. Ass'n (Appeal of Rice)*, 300 Mich. 320; *Commissioner of Insurance v. Lapeer Circuit Judge*, 302 Mich. 614; *Emery v. Clark*, 303 Mich. 461), not including an appeal from a contempt proceeding arising from liti-

gation concerning the association (*In re Gilliland,* 284 Mich. 604), and the instant case. The foregoing does not include the multitude of other suits arising out of this receivership in various circuit courts in this State.

On December 23, 1935, the Ingham county circuit court, in chancery, entered an order authorizing the receiver to levy an assessment. An assessment was levied and in *Simpson v. Goodrich, supra,* this Court held it to be invalid because it was not made in accordance with the order of the circuit court. A second assessment was held invalid by the circuit court. A third assessment was levied in July, 1940, and upheld by this Court in *Attorney General, ex rel. Commissioner of Insurance,* v. *Lapeer Farmers Mutual Fire Ins. Ass'n (West's Appeal re Assessment), supra.*

In April, 1936, William G. Simpson, the deputy receiver, filed a petition seeking the allowance of certain claims among which was that of William E. Ivory, the secretary-treasurer of the association from January, 1927, to June, 1935, in the amount of $5,095.13. An appeal was taken from the order allowing that claim and in *Attorney General, ex rel. Commissioner of Insurance,* v. *Lapeer Farmers Mutual Fire Ins. Ass'n (Claim of Ivory), supra,* this Court disallowed the claim on the ground that Ivory was largely responsible for the mismanagement of the affairs of the defunct insurance association. On August 19, 1938, deputy receiver Simpson began a suit against Ivory as an officer and director of the company and the Michigan Surety Company, the surety on his bond. On January 27, 1940, a judgment was entered for plaintiff Simpson in the sum of $1,950.38. On August 16, 1941, the then commissioner of insurance and statutory receiver of the association, Eugene P. Berry, instituted suit against

Edward Murphy and other officers and directors of the company alleging maladministration in office. The decree of the court, entered August 31, 1946, disallowed certain fees and compensation to the various officers and directors of the association.

The present commissioner of insurance, David A. Forbes, testified in the lower court in the instant case on April 19, 1946, that the total assessment roll, spread in 1940, amounted to $198,540.10; that the total amount collected by the receiver was $99,399.92; that at the inception of the receivership there was due creditors a total of $90,115.37, in approved claims; and that during all this time the creditors had received only a 5 per cent. dividend which totaled $4,503.99. The commissioner further testified that there is currently due creditors a total amount of $94,263.83, which is approximately $4,000 more than was due them in 1935, when the receivership was instituted. The present deputy receiver, Richard W. Atwell, stated that uncollected assessments are in excess of $96,000, of which approximately $20,000 are in judgments, and that in his opinion not more that one-third of the uncollected assessments is collectible. He estimated the cash on hand as approximately $45. Costly litigation and other expenses of the receivership have consumed most of the funds realized from paid assessments. Appellants dispute the accuracy of many of the foregoing figures; but the record shows that they are sufficiently accurate to indicate the background against which the creditors' plan which gave rise to the instant case was evolved.

After extended creditors' conferences attended by the present commissioner of insurance, a plan was worked out whereby it was hoped that the receivership might be brought to a long overdue

termination with something salvaged for the benefit of wearied creditors. The plan provided that members of the association who had not as yet paid their assessments would pay to a trustee their original assessment plus 50 per cent. thereof, and that the members who had already paid their assessments would contribute an additional 50 per cent., and upon such payments being made, those members would be relieved of any further liability. The fund thus collected would then be turned over to a creditors' committee of three trustees. The statutory receiver would thereupon transfer all claims for all assessments not paid as provided for in this plan and all judgments to the three trustees of the creditors' committee, and the creditors would accept the proceeds of the voluntary contributions plus recoveries upon such assessments and judgments in full settlement of their claims. Charles A. Stier was selected as trustee and the various members of the association were circularized with the result that approximately $35,000 has been voluntarily paid to the trustee. This voluntary fund is not an asset of the receivership but is in the nature of an incentive bonus that the creditors would receive in addition to their share of liquidated assets if and when the plan is carried out. The trial judge found that 52 creditors had agreed to the plan while eight had either neglected or refused to accept it. As shown by the record, a power of attorney, signed by 48 creditors, authorized Charles A Stier, Fred C. Ballard and Herbert W. Smith to represent creditors with full authority to receive the assets of defendant association from the receiver, to receipt for same in full settlement of their claims and to distribute said assets pro rata among the creditors. The commissioner of insurance stated that creditors'

claims totaled $94,263.83, of which the nonassenting creditors' claims, according to appellants' own calculations, represent a total of $12,211.67.

The testimony clearly indicates that this plan would benefit all of the parties concerned and that a continuance of the receivership would be a loss rather than a gain to the creditors. Mr. Walter Foster, formerly attorney for the receiver, waived his preferred claim in the sum of $8,652.50, on condition that the plan be adopted. This in itself would be a substantial benefit to the other creditors.

On April 25, 1946, David A. Forbes, the incumbent commissioner of insurance and receiver of defendant association, petitioned the circuit court for the county of Ingham for authority to transfer the assets of the association, consisting of unpaid assessments and judgments, to the trustees of the creditors' committee in accordance with the aforementioned plan of liquidation. Of the more than 4,500 interested members and creditors of the association, the answer and objection to the commissioner's petition was signed by 134, of whom 5 are indicated as creditors.

In granting the prayer of the petition, Judge Eger observed:

"It is apparent that little can be accomplished by continuing the receivership. The smallness of the individual assessments, the large amount of litigation, the several appeals to the Supreme Court, the general antagonism of many of the members, and other factors have made its handling an expensive process, with little reward to creditors. Unless this plan is put into operation they will receive nothing. If this proposal had come up some years ago it would necessarily have been denied, but in view of the history of this receivership I feel that it represents the only salvation, and that only partly, for those who have suffered losses."

A decree was entered on May 6, 1946, authorizing the commissioner and receiver to transfer the assets of the association to the creditors' trustees and ordering the latter to give receipt in full satisfaction of liability to the receiver, and to the member policy holders who have paid their assessments; the decree provides that upon the failure of the trustees or the nonassenting creditors to give releases and discharges, the decree shall constitute such. The proposed trustees are ordered to give individual bonds in the amount of $5,000, running to the commissioner of insurance for the protection of the creditors and members of the association. The court retains jurisdiction over the trustees as to any matters which may require further adjudication; and the decree directs that a written report of their activities be filed with the court semiannually, with a copy to the commissioner of insurance. The decree also provides that any nonassenting creditor or any member of the association who has paid his assessment in full may, within 90 days from the date of the decree and not afterwards, institute at his own expense on behalf of himself or himself and others of his own class an action or actions against any former commissioner of insurance, as receiver, and their deputies in charge, excepting therefrom the present receiver and the present deputy, with the proviso that any such action or actions shall be without cost or liability on the part of the present receiver, his deputy or the trustees. The decree further orders that upon transfer of the assets of the association by the receiver to the creditors' trustees and upon the filing of the receiver's final account and receipts, the receiver, David A. Forbes, and his deputy, Richard Atwell, be automatically discharged as receiver and deputy receiver, respectively, and that the respondent association be

dissolved and its charter terminated and forfeited
without further order of the court. Appellants,
who are nonassenting creditors and objecting mem-
bers of the association, appeal from the decree. The
contentions of the appellants are discussed seriatim:

1. Appellants claim that rights of action exist
against the various receivers and deputy receivers
of the association which constitute assets of the re-
ceivership. They particularly allege that the re-
ceivers and deputy receivers are liable for permit-
ting causes of action to outlaw in failing to proceed
promptly against the officers and directors of the
association. Although belatedly brought, the ques-
tion of the liability of the officers and directors of
the insolvent association was litigated in Berry v.
Murphy, Lapeer Circuit Court Chancery No. 4972,
in which the court disallowed certain fees and com-
pensation claimed by the various officers and direc-
tors. In his opinion in that case, Judge Dehnke
stated:

"The history of the defunct insurance association
and of the receivership is set out in large part in
the opinions filed in this and other circuit courts,
and in the Supreme Court, in cases growing out of
the receivership. These all indicate, in line with
the testimony in this case, that, while it is true that
the officers and directors did not measure up to
their responsibilities, the deeper and more funda-
mental cause of the decline and final collapse of the
structure was the failure of the membership to ap-
preciate the necessity and importance of selecting
for these positions of responsibility men qualified
by training and experience to operate an insurance
company efficiently and successfully. Secretary-
treasurer Ivory lacked this experience and train-
ing, and told the membership so when his selection
was proposed. (Note opinion in Simpson v. Ivory,
Chancery case, Lapeer county). He was elected,

nevertheless, again and again, by the members (not
the directors), in annual meeting. The same lack
of good judgment was exhibited in the election of
most of the directors. The test was not ability and
qualification, but general reputation and personal
acquaintance, and back of it was the notion that to
pay the salaries necessary to obtain qualified man-
agement would be a waste of money. This, I should
say, was the mortal cancer which had been gnaw-
ing at the vitals of the organization, and had become
incurable long before September, 1935.''

Thus it would appear highly problematical that a
judgment greater than that realized could have been
had even if the action had been brought more
promptly. Appellants object to any consideration
of Berry v. Murphy, *supra,* on the ground that it is
outside the record, notwithstanding that their own
exhibits, Nos. 33 and 34 included in the record, are
the bill of complaint and the calendar entries, re-
spectively, in that case. Looking at the entire rec-
ord *de novo,* and considering the many cases
involving this association previously decided in this
Court, we might reach the same conclusion arrived
at by Judge Dehnke were the exact question before
us. Appellants raise many questions, but the cases
cited by them refer to the outlawing of liquidated
not unliquidated claims. Query, whether an insur-
ance commissioner acting in his capacity as statu-
tory receiver of this defunct insurance association is
liable for a possible mistake of judgment in not hav-
ing gone to the expense of bringing suit against
officers and directors of the insolvent company when
it appeared that chances or recovery were most re-
mote? The entire question, however, is academic in
view of the fact that the decree of the lower court
preserves the right of nonassenting creditors and
dissatisfied members of the association who have

paid their assessments in full, to proceed against all of the receivers and deputy receivers, excepting only the incumbents, at their own expense. There is no deprivation of valuable rights. If the non-assenting creditors and dissatisfied members regard seriously the alleged causes of action against former receivers and deputy receivers, they are free to pursue their remedy within the prescribed period of time. The 90-day period shall begin with the entry of the final decree in this Court, and the recovery, if any, shall be for the benefit of all creditors, or in the remotest contingency, after their payment in full, for the benefit of all members of the association. In connection therewith, the trial court observed that the possibility of any member receiving any reimbursement for assessments paid seemed most remote.

2. Appellants contend that the nonassenting creditors cannot be compelled to submit to the sale of the assets of the receivership, as provided for in the decree, and urge that there must be a public offering for sale of such assets after due and proper notice. In support of this contention they cite Court Rule No. 53 (1945), section 1 of which provides that a receiver, appointed in a suit upon a creditor's bill, may sell desperate debts, and all other doubtful claims to personal property, at public auction, giving at least 10 days' notice of the time and place of such sale. It will be noted, however, that the above court rule applies to a receiver in a suit upon a creditor's bill and is not made applicable to the receiver of an insurance company whose rights and duties are defined by statute. 3 Comp. Laws 1929, § 12269 (Stat. Ann. 1943 Rev. § 24.46) provides:

"The commissioner of insurance or his deputy or special deputy, acting under the provisions of this chapter in any liquidation proceedings, shall have

all the powers of a receiver in insolvency proceedings, and may do and perform any act for the protection of the assets or the recovery of the same, and for the settlement or discharge of the obligations of the insurance company, that may be necessary or *that may be directed by the court."*

We are of the opinion that the powers granted the commissioner coupled with the broad discretionary powers of the court are sufficient to embrace the sale of assets provided for in the decree of the lower court. To insure the highest return possible, however, and to allay appellants' fears, this being a court of equity, we do order that the decree be so modified as to provide that after the trustees shall have received from the commissioner of insurance an assignment of the assets of the receivership, the trustees, upon proper showing and at such time as may be determined by the trial judge and pursuant to published notice of the date and place, shall proceed to a public sale of all such assets; that whatever moneys shall be realized from such sale above the cost thereof shall be disbursed to the creditors of the association in like proportions as the so-called voluntary fund, with the further provision that should such sale produce a sum more than sufficient to pay all of the claims of creditors, the surplus shall be distributed pro rata among those members of the association who have paid their assessments in full. The decree shall also provide that the trustees shall pay a first dividend of at least 90 per cent. of all moneys paid in to them within 60 days after the entry of the final decree in the instant case in this Court which decree shall also remand the case to the trial court for such further action as may be necessary.

3. Appellants contend that the proposed creditors' trustees are not proper persons to handle the

money of nonassenting creditors.   This contention is based on the alleged hostility of one of the trustees toward appellants and the conduct of another of the trustees in an entirely different matter and in no way justifying the characterization of him by appellants.   The trial judge stated in his opinion that no objection of any kind was made to the persons selected as trustees.   And in view of the fact that all three have been ordered to give individual bonds in the amount of $5,000, with the court retaining jurisdiction over their activities, we are not persuaded that there is a basis for disqualifying any of the proposed creditors' trustees.

4.   Appellants contend that the decree does not legally and equitably protect all parties.   They claim that inasmuch as the agreement and declaration of trust provides that if the moneys collected in the aggregate shall be unacceptable to all the creditors as full payment of their claims, then each member shall have returned to him the amount he has contributed.   While the agreement calls for consent on the part of all creditors, a result seldom obtainable, the vast majority have subscribed to it and have shown no disposition to withdraw.   We hold that unless a very large number indicate their desire to withdraw at once, the agreement shall be binding upon those members who have paid the full 150 per cent. of their original assessment.   A cancellation of the agreement shall be without prejudice to the presentation of an application to the trial court for an order following in the main the provisions of this same agreement.   The situation presented herein differs entirely from that in *Detroit Trust Co.* v. *Stormfeltz-Loveley Co.*, 257 Mich. 655 (88 A. L. R. 1263), where we held that a court could not deprive a dissenting bondholder of his full rights under a mortgage contract.   Here, we are dealing solely

with a debtor-creditor relationship which the insurance commissioner and a court of equity are fully protecting. After 11½ years of costly and litigious experience, the court of equity approved of the only feasible and practical method to salvage something for the creditors. None of the directors have offered any plan by sale or otherwise that would realize as much for the creditors as the consummation of the present plan will.

Appellants also object that the decree does not order the trustees to distribute the assets of the receivership to the creditors. Such distribution is implicit in any plan of liquidation and is adequately safeguarded herein by reason of the court's retention of jurisdiction and supervision over the activities of the creditors' trustees. Appellants further contend that the decree fails to protect them properly in that the bonds of the trustees run to the commissioner of insurance who by the very terms of the decree is to be discharged and released once he turns over the assets of the receivership to the creditors' trustees. This contention fails to consider the fact that the commissioner of insurance, who is an officer of the State with certain prescribed statutory duties in the premises, is the logical person to protect the interests of *all* parties concerned herein, and was thus properly designated by the court.

5. Appellants claim that the decree permits the release and discharge of the receiver without his filing a final account and without giving all interested parties due notice thereof and a right to be heard thereon. We note that the decree provides as follows:

"It is further ordered, adjudged and decreed that upon the transfer of the said assets by David A. Forbes, as receiver, to the creditors' trustees, *and*

*upon the filing of the receiver's final account and receipts,* the petitioner, David A. Forbes and his deputy, Richard Atwell, be automatically discharged as receiver and deputy receiver respectively.''

This is interpreted as requiring the receiver, as a condition precedent to his discharge, to file a final account which shall be acceptable to the court. Such an account would be acceptable to the court only after proper notice to interested parties who shall have an opportunity to be heard thereon.

6. Appellants contend that the decree permits persons other than the commissioner of insurance and his deputy to act as liquidators of the association contrary to statutory provision. They cite 3 Comp. Laws 1929, § 12266 (Stat. Ann. 1943 Rev. § 24.43) which provides:

"Such liquidation shall be made by and under the direction of the commissioner of insurance who may deal with the property and business of such corporation in his own name as commissioner or in the name of the corporation, as the court may direct, and shall be vested by operation of law with title to all the property, contracts and rights of action of such corporation as of the date of the order so directing him to liquidate."

It must be recognized that the purpose of the statute is to provide for efficient liquidation with the least possible delay. In the instant case such liquidation is effected when the receiver transfers the assets to the trustees for the benefit of creditors in consideration of the discharge of their claims. *Cf. Gockstetter v. Williams* (C. C. A.), 9 Fed. (2d) 354, wherein it was held that the receiver of an insolvent national bank might sell collectible debts, rather than make actual collection and that such sale was not invalid on the theory that the receiver was thus being relieved of statutory duties.

7. Appellants claim that the decree deprives them of their rights and property without due process of law and equal protection of the law, and impairs their contract rights, contrary to and in violation of the Constitutions of the United States and the State of Michigan. The contention is made that the decree impairs the contract existing between appellants and the association by attempting to substitute creditors' trustees for the official liquidator of insurance companies designated by statute. It has already been demonstrated, however, that this particular plan of liquidation does not constitute an abandonment of statutory duties on the part of the commissioner of insurance but rather is within their general purport. It has also been shown that the discharge of the receiver is contingent upon his filing a final account on which a hearing shall be had after due notice to interested parties.

8. Finally, appellants have filed a motion to remand, claiming that the trial court was disqualified to hear and determine the matters involved in the instant case. They allege that Judge Eger, who heard the case in the lower court, was formerly a member of the law firm which served as general counsel for George D. MaDan, a judgment creditor of the association, and was, therefore, biased and prejudiced in this litigation. The mere fact that the MaDan claim is in the amount of $198.70, as compared with total creditors' claims in excess of $94,000, and has already been reduced to judgment, indicates that the motion to remand is entirely without merit.

In view of the fact that this receivership is over 11½ years old, the further fact that unless this plan is adopted it is highly improbable that anything will be realized for the creditors, and in the last analysis, that a court of equity has a plain duty in the prem-

ises when confronted with the peculiar facts in this case, we affirm the decree of the trial court as herein modified. Neither of the parties having fully prevailed, no costs will be allowed.

BUSHNELL, SHARPE, REID, and NORTH, JJ., concurred. CARR, C. J., and BOYLES and DETHMERS, JJ., did not sit.