SALINAS v GENESYS HEALTH SYSTEM

Docket No. 242895. Submitted July 13, 2004, at Lansing. Decided August 19, 2004, at 9:05 A.M.

Karen Salinas brought an action in the Genesee Circuit Court against Genesys Health System, alleging that the defendant was liable under a respondeat superior theory for damages resulting when the plaintiff was sexually assaulted by a nurse employed by the defendant while the plaintiff was a patient in the defendant hospital. The defendant moved for summary disposition, arguing that it is not responsible for the tortious acts of its employee committed outside the scope of the employment. The court, Judith A. Fullerton, J., granted summary disposition in favor of the defendant. The plaintiff appealed, alleging that an exception to the general rule cited by the defendant applies in this case because the nurse was aided in accomplishing the assault by the existence of the nurse's agency relationship with the defendant, which enabled the nurse to be alone and unsupervised with the plaintiff.

The Court of Appeals *held*:

The defendant did not entrust the nurse with decision-making power, discretion, or authority over patients so as to facilitate or aid the nurse in committing the sexual assault. For the purpose of application of the exception to the general rule relied on by the plaintiff, an employee is not aided in accomplishing a tort by the existence of an agency relationship just because of the mere fact that the employee's employment situation may offer an opportunity for tortious activity.

Affirmed.

MASTER AND SERVANT — TORTS — INTENTIONAL TORTS.

An employer generally is not liable for torts intentionally committed by an employee that are outside the scope of the employment; the mere fact that the employee's employment situation may offer an opportunity for tortious conduct does not support a finding that the employee was aided in accomplishing a tort by the existence of an agency relationship with the employer.

*Joliat, Tosto, McCormick & Bade, PLC* (by *Eric T. McCormick*), for the plaintiff.

*Bigler, Berry, Johnston, Sztykiel & Hunt, P.C.* (by *Mary Jo Boerman* and *Lori A. Barker*), for the defendant.

Before: BANDSTRA, P.J., and FITZGERALD and HOEKSTRA, JJ.

BANDSTRA, P.J. Plaintiff alleges that she was sexually assaulted by a male nurse employed by defendant hospital and that defendant should be held liable under a respondeat superior theory of vicarious liability. Generally, an employer cannot be held liable for such a tortious act of an employee. However, plaintiff argues that an exception to that rule should apply here because the nurse was aided in accomplishing the assault on her by the existence of the agency relationship between the nurse and defendant. It is not clear whether this exception to the general rule against employer liability has been adopted in Michigan. However, even if we were to recognize the exception, it would not apply under the facts of this case. Accordingly, we affirm the trial court's grant of summary disposition for defendant.

### BACKGROUND FACTS AND PROCEEDINGS BELOW

Plaintiff alleged that she was admitted to the intensive care unit of defendant's hospital and that throughout her admission she was vulnerable because of "her diminished physical state" and the medications she was receiving. Plaintiff further alleged that while she remained under defendant's care, she was sexually assaulted by a registered nurse employed by defendant, and the nurse "was aided in accomplishing the assault upon plaintiff by the existence of his agency relation-

ship with defendant in that said relationship enabled him to, among other things, be alone and unsupervised with plaintiff at the time and place of said assault."

Plaintiff named only Genesys Health System, the employer hospital, and not the nurse, as a defendant in this suit. Plaintiff alleged two counts against defendant in her complaint, one for assault and battery and one for intentional infliction of emotional distress. With regard to each count, plaintiff expressly alleged that defendant was liable for the nurse's acts under the doctrine of respondeat superior.

Defendant moved for summary disposition under MCR 2.116(C)(8) on the ground that an employer is not liable for a tortious act of an employee committed outside the scope of employment. The trial court granted defendant's motion for summary disposition.

### STANDARD OF REVIEW

We review de novo a trial court's grant of summary disposition for failure to state a claim on which relief can be granted. *Churella v Pioneer State Mut Ins Co*, 258 Mich App 260, 266; 671 NW2d 125 (2003). In conducting this review, we assume that all factual allegations in the nonmoving party's pleadings are true and determine if there is a legally sufficient basis for the claim. *Id.*

### DISCUSSION

Our Supreme Court has repeatedly held that liability cannot be imposed against an employer for torts intentionally committed by an employee that are outside the scope of the employment.[1] See *McCann v Michigan*, 398

---

[1] Plaintiff does not argue that the nurse's actions were within the scope of his employment.

Mich 65, 71; 247 NW2d 521 (1976); *Bradley v Stevens*, 329 Mich 556, 562; 46 NW2d 382 (1951); *Martin v Jones*, 302 Mich 355, 358; 4 NW2d 686 (1942). In some jurisdictions, courts have recognized an exception to that general principle where the employee "was aided in accomplishing the tort by the existence of the agency relation." See 1 Restatement Agency, 2d, § 219(2)(d), p 481.[2] Plaintiff argues that this exception has been adopted as a matter of Michigan law and that it applies to the facts of this case. We disagree.

First, it is not at all clear that the exception plaintiff relies on has been recognized in Michigan. Plaintiff primarily argues that our Supreme Court adopted the exception in *Champion v Nation Wide Security, Inc*, 450 Mich 702; 545 NW2d 596 (1996).[3] The plaintiff in *Champion*, a female security guard, was ordered by her male supervisor to go with him to a remote part of a building where he then raped her. *Id.* at 705-706. The question before our Supreme Court was whether the employer was liable to the plaintiff for quid pro quo sexual harassment under the Civil Rights Act, MCL

---

[2] The Restatement also allows an exception in cases where the employee "purported to act . . . on behalf of the [employer] and there was reliance upon apparent authority," Restatement, § 219(2)(d), but plaintiff does not argue that this exception applies to the facts here.

[3] Other than *McCann, supra*, discussed later in this opinion at n 4, we could find no other mention of the Restatement exception in any Supreme Court precedent, and it has been referenced by this Court only in cases without precedential effect pursuant to MCR 7.215(J)(1), see *McCalla v Ellis*, 180 Mich App 372, 379; 446 NW2d 904 (1989); *Rushing v Wayne Co*, 138 Mich App 121, 136-137; 358 NW2d 904 (1984), vacated 436 Mich 247; 462 NW2d 23 (1990); *Borsuk v Wheeler*, 133 Mich App 403, 411; 349 NW2d 522 (1984); *Graves v Wayne Co*, 124 Mich App 36, 41-42; 333 NW2d 740 (1983); *Gaston v Becker*, 111 Mich App 692; 314 NW2d 728 (1981) (HOLBROOK, JR, J., concurring in part and dissenting in part); *Bozarth v Harper Creek Bd of Ed*, 94 Mich App 351, 353-355; 288 NW2d 424 (1979), and in a concurring opinion, see *Elezovic v Ford Motor Co*, 259 Mich App 187, 212; 673 NW2d 776 (2003) (KELLY, J. concurring).

37.2103(i). *Champion, supra* at 704-705.

Our Supreme Court rejected the defendant employer's argument that it should not be liable under the Civil Rights Act because it had not authorized the supervisor to rape the plaintiff and he was not acting as its agent in doing so. *Id.* at 711-712. The Court's discussion focused on reasons for imposing liability for quid pro quo sexual harassment on an employer for a supervisor's conduct toward an employee in the context of the civil rights statute. The Court reasoned that the defendant's position "fail[ed] to recognize that when an employer gives its supervisors certain authority over other employees, it must also accept responsibility to remedy the harm caused by the supervisors' unlawful exercise of that authority." *Id.* at 712. The Court adopted the "nearly unanimous view" imposing strict liability on employers for quid pro quo sexual harassment committed by supervisory personnel. *Id.* That rule recognizes that most employers are corporate entities that cannot function without delegating supervisory power and that allowing employers "to hide behind a veil of individual employee action will do little, if anything, to eradicate discrimination in the workplace." *Id.* at 713. The Court also noted that immunizing an employer where it did not authorize offending conduct would create "an enormous loophole in the statute"; because employers rarely, if ever, authorize sexually offensive conduct, "employees would no longer have a remedy for . . . sexual harassment." *Id.* Thus, the Court held that "an employer is liable for [sexual assaults] where they are accomplished through the use of the supervisor's managerial powers," believing "that this result best effectuates the remedial purpose of the Civil Rights Act . . . ." *Id.* at 704.

We reject plaintiff's argument that *Champion* applies to the facts here and requires that the summary disposition granted to defendant be reversed. The reasoning and decision in *Champion* resulted largely from the Civil Rights Act and the remedial purpose the Court found that it served in situations involving employers, supervisors, and subservient employees. Plaintiff here does not allege any Civil Rights Act violation and she is not an employee of defendant, subservient to the nurse who assaulted her. While the supervisor in *Champion* had authority over the plaintiff by virtue of the employment relationship, *id.* at 712, in this case, defendant, by virture of the emloyment relationship, gave no equivalent authority to the nurse who assaulted plaintiff. Defendant did not entrust him with decision-making power, discretion, or authority over patients so as to facilitate or aid him in committing a sexual assault.

Further, we question whether *Champion* generally "adopted" the Restatement exception to the usual rule that an employer cannot be held liable for torts intentionally committed by an employee. The only mention of the Restatement exception was made in passing in a footnote. In the course of rejecting the defendant's "construction of agency principles [as] far too narrow," the Court made a "see" reference to the Restatement exception. *Id.* at 712 n 6. We are unconvinced that this constituted an adoption of the Restatement exception, especially for cases like the present one involving tort actions not at issue in *Champion*.[4]

In any event, we need not decide whether the Restatement exception has been or should be recognized

---

[4] Similarly, the reference to the Restatement exception in *McCann*, *supra* at 71, was in an opinion joined by only two justices, which does not constitute "binding authority under the doctrine of stare decisis." *Burns v Olde Discount Corp*, 212 Mich App 576, 582; 538 NW2d 686 (1995).

because the facts here would not support its application in any event. Plaintiff alleges only that the nurse's relationship with defendant enabled him to be alone and unsupervised with her at the time and place of the assault. This Court has held that an employee is not "aided in accomplishing the tort by the existence of the agency relation," under the Restatement exception, just because of the "mere fact that an employee's employment situation may offer an opportunity for tortious activity . . . ." *Bozarth v Harper Creek Bd of Ed*, 94 Mich App 351, 355; 288 NW2d 351 (1979). Although, as previously noted, *Bozarth* is not precedentially binding, we find this conclusion persuasive because it is supported by the United States Supreme Court's analysis in the companion cases of *Burlington Industries, Inc v Ellerth*, 524 US 742; 118 S Ct 2257; 141 L Ed 2d 633 (1998), and *Faragher v Boca Raton*, 524 US 775; 118 S Ct 2275; 141 L Ed 2d 662 (1998).

*Ellerth* and *Faragher* both involved sexual harassment cases brought under title VII of the Civil Rights Act of 1964 (42 USC 2000e *et seq.*). That act defines an "employer" to include "agents," 42 USC 2000e(b), and the Court turned to " 'the general common law of agency' " to determine whether an employer has vicarious liability when a supervisor engages in sexual discrimination. *Ellerth*, *supra* at 754 (citation omitted). The Court recognized the Restatement as a useful beginning point for this question and considered the exception to the rule against holding an employer liable for tortious acts of an employee that plaintiff relies on here.

> We turn to the aided in the agency relation standard. In a sense, most workplace tortfeasors are aided in accomplishing their tortious objective by the existence of the agency relation: Proximity and regular contact may afford a captive pool of potential victims. Were this to satisfy the

aided in the agency relation standard, an employer would be subject to vicarious liability not only for all supervisor harassment, but also for all co-worker harassment, a result enforced by neither the EEOC [Equal Employment Opportunity Commission] nor any court of appeals to have considered the issue. The aided in the agency relation standard, therefore, requires the existence of something more than the employment relation itself. [*Id.* at 760 (citations omitted).]

The Court illustrated the "something more" that was needed for application of the "aided in the agency relation standard" by contrasting supervisors with co-workers.

[M]ore than the mere existence of the employment relation aids in commission of . . . harassment . . . when a supervisor takes a tangible employment action against the subordinate [as part of that harassment]. . . . [O]ne co-worker . . . cannot dock another's pay, nor can one co-worker demote another. Tangible employment actions fall within the special province of the supervisor. The supervisor has been empowered by the company as a distinct class of agent to make economic decisions affecting other employees under his or her control. . . . [A] supervisor's power and authority invests his or her harassing conduct with a particular threatening character, and in this sense, a supervisor always is aided by the agency relation. [*Id.* at 760, 762-763.]

Similarly, in *Faragher*, the Court reasoned that:

When a person with supervisory authority discriminates[,] . . . his actions necessarily draw upon his superior position over the people who report to him, or those under them, whereas an employee generally cannot check a supervisor's abusive conduct the same way that she might deal with abuse from a co-worker. When a fellow employee harasses, the victim can walk away or tell the offender where to go, but it may be difficult to offer such responses to a supervisor . . . . [*Faragher, supra* at 803.]

Under the *Ellerth/Faragher* analysis, the tortious actions of an employee committed outside the scope of employment "aided by the agency relation" only if the agency itself empowers the employee to commit the tortious conduct. The supervisors in *Ellerth* and *Faragher* were thus empowered; because of the position each had as agent for the employer, each had authority over his subordinates. Thus, they were empowered to subject those subordinates to sexual discrimination or harassment. In contrast, the Court reasoned that co-workers hold no similar empowering agency as a result of their employment. The fact that a coworker, by virtue of the coworker's employment status, works near and has contact with fellow employees who might be subjected to sexual misbehavior is insufficient. *Ellerth*, *supra* at 760. In other words, as this Court held in *Bozarth*, "[t]he mere fact that an employee's employment situation may offer an opportunity for tortious activity" does not mean that he " 'was aided in accomplishing the tort by the existence of the agency relation' " for purposes of the Restatement exception. *Bozarth*, *supra* at 354-355 (citation omitted).

Considering the analysis of *Ellerth* and *Faragher*, we find this holding of *Bozarth* to be persuasive and adopt it as our own. Plaintiff here has alleged only that the male nurse was presented with the opportunity to sexually assault her as a result of his employment with defendant. That is insufficient to state a claim against defendant, even if the Restatement exception to the general rule absolving an employer of liability for tortious acts outside the scope of employment committed by an employee were to be recognized in Michigan. The trial court properly granted defendant's motion for summary disposition.

We affirm.