*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEBORAH HENDERSON,

        Petitioner-Appellant,

v

DEPARTMENT OF HEALTH AND HUMAN SERVICES,

        Respondent-Appellee.

FOR PUBLICATION
May 18, 2023
9:10 a.m.

No. 359840
Grand Traverse Circuit Court
LC No. 21-035908-AA

Before: LETICA, P.J., and BORRELLO and RIORDAN, JJ.

RIORDAN, J.

Petitioner Deborah Henderson appeals by leave granted[1] the circuit court's order affirming the decision of the administrative law judge (ALJ), which in turn had affirmed respondent's decision to impose a divestment penalty on petitioner for long-term care Medicaid benefits. We also affirm.

## I. BACKGROUND

The facts of this case are not in dispute. On February 2, 2021, petitioner entered into a long-term care facility. On February 17, 2021, petitioner created The Deborah E. Henderson Irrevocable Trust (the Trust). The beneficiaries and trustees of the Trust were relatives of petitioner. The Trust's assets were only available to these beneficiaries; petitioner could not receive any Trust assets. On March 24, 2021, petitioner transferred funds from her bank account to the Trust, which closed out the bank account. On April 22, 2021, petitioner applied for long-term benefits from Medicaid. On April 28, 2021, petitioner transferred the entirety of her individual retirement account (IRA) into the Trust. Both the bank and IRA transfers occurred

---

[1] *Henderson v Dep't of Health and Human Servs*, unpublished order of the Court of Appeals, entered June 27, 2022 (Docket No. 359840).

without any consideration in return, and petitioner does not dispute that she made such transfers to qualify for Medicaid benefits.

After evaluating petitioner's application for benefits, respondent determined that, because the Trust could not pay out any assets to petitioner, it was not "countable" for purposes of determining her eligibility for benefits.[2]  Respondent further determined that petitioner transferred the assets to the Trust for less than fair market value because she did not receive any consideration in return.  Given that these transfers occurred within a 60-month look-back period set by statute, respondent concluded that a divestment of assets had occurred, and it assessed a divestment penalty to petitioner.  This divestment penalty prohibited petitioner from receiving Medicaid benefits for 24 months and 15 days.  The end date for this period is April 15, 2023.

The ALJ affirmed respondent's decision, agreeing with respondent's determination that the transfers had been for less than fair market value and were within the look-back period.  Petitioner appealed to the circuit court and argued that our Supreme Court's decision in *Hegadorn v Dep't of Health and Human Servs*, 503 Mich 231; 931 NW2d 571 (2019), effectively abolished the divestment penalty.  Petitioner did not contest that her transfers would otherwise be considered divestments and incur the penalty.  The circuit court rejected petitioner's position and upheld the ALJ's affirmance, distinguishing *Hegadorn* and deeming it inapplicable to the divestment penalty issue.  Petitioner now appeals and contends that the circuit court by failing to correctly apply *Hegadorn*.

## II.  ANALYSIS

## A.  STANDARD OF REVIEW

The circuit court was tasked "to review the administrative decision to determine if it was authorized by law and supported by competent, material, and substantial evidence on the whole record." *Nat'l Wildlife Federation v Dep't of Environmental Quality (No. 2)*, 306 Mich App 369, 372-373; 856 NW2d 394 (2014), citing Const 1963, art 6, § 28; MCL 24.306(1).  "An agency decision is not authorized by law if it violates constitutional or statutory provisions, lies beyond the agency's jurisdiction, follows from unlawful procedures resulting in material prejudice, or is arbitrary and capricious." *Id*. at 373.  Accordingly, we review the circuit court's review of an administrative decision to "determine whether the lower court applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test to the agency's factual findings." *Id*. (quotation marks and citation omitted).  This standard is "indistinguishable" from the clearly-erroneous standard, which provides that "[a] finding is clearly erroneous when, on review of the whole record, this Court is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).  Finally, we review de novo an agency's interpretation of a statute. *Id*.

## B.  DISCUSSION

---

[2] There has never been a dispute between the parties that the Trust assets were not countable.

Petitioner argues that the circuit court erred by failing to correctly apply *Hegadorn*. We disagree.

Our Supreme Court in *Hegadorn* discussed the main overarching principles of the Medicaid benefits program. "The Medicaid program is governed by a complex web of interlocking statutes, as well as regulations and interpretive documents published by state and federal agencies." *Hegadorn*, 503 Mich at 245. Medicaid is "a need-based assistance program for medical care that is funded and administered jointly by the federal government and individual states." *Id*. Although Medicaid is managed by the Secretary of Health and Human Services at the federal level, each state that participates in the program "develops a plan containing reasonable standards . . . for determining eligibility for and the extent of medical assistance within boundaries set by the Medicaid statute and Secretary of Health and Human Services." *Id*. at 246 (quotation marks and citations omitted; alteration in original). Relevant here, "Congress has . . . enacted an optional [Medicaid] program, in which states may elect to participate, for those who are deemed 'medically needy.' " *Id*. at 247 (citations omitted). Such "medically needy individuals . . . become eligible for Medicaid benefits only when their incomes and assets are reduced below certain established levels." *Id*. Because Michigan has "include[d] this optional coverage for the medically needy in its state Medicaid plan," the state "must comply with the requirements imposed by the federal Medicaid statutes." *Id*.

As our Supreme Court explained, "Congress has made numerous . . . amendments of the Medicaid statutes to adapt the program to changing economic realities while striving to prevent abuse of the program." *Id*. at 248. Such abuses often involve "estate planning tools like trusts and annuities." *Id*. One of the amendments to prevent abuse provided that states which have chosen to participate in Medicaid must comply with 42 USC 1396p, which contains provisions that address transfers of assets and trusts. *Id.* at 249.

Under 42 USC 1396p and the accompanying regulations, the initial step in qualifying for Medicaid benefits is to determine whether the individual has "$2,000 or less of countable assets." *Mackey v Dep't of Human Servs*, 289 Mich App 688, 698; 808 NW2d 484 (2010). See also *Hegadorn*, 503 Mich at 249-250. In the present case, there is no dispute among the parties that petitioner had $2,000 or less of countable assets because the Trust's assets were not countable.

However, even if assets are not countable for purposes of Medicaid eligibility, assets are still subject to a "look-back period," which "impose[s] periods of ineligibility for certain Medicaid benefits where the applicant divested himself or herself of assets for less than fair market value." *Mackey*, 289 Mich App at 694, 696 (quotation marks and citations omitted). More specifically, "[a] transfer for less than fair market value during the 'look-back' period is referred to as a 'divestment,' and unless falling under one of several exclusions, subjects the applicant to a penalty period during which payment of long-term-care benefits is suspended." *Id*. at 696. However, this is merely a divestment penalty period during which benefits are unavailable; it does not "prohibit eligibility altogether." *Id*. at 694. There is no dispute in the present case that none of the exclusions apply and that petitioner transferred her assets for less than fair market value.

The divestment penalty applies to transfers of assets to trusts. See *Hegadorn*, 503 Mich at 276-277 (MCCORMACK, C.J., *concurring*). For irrevocable trusts,

any portion of the trust from which, or any income on the corpus from which, no payment could under any circumstances be made to the individual shall be considered, as of the date of establishment of the trust (or, if later, the date on which payment to the individual was foreclosed) to be assets disposed by the individual *for purposes of subsection (c)*, and the value of the trust shall be determined for purposes of such subsection by including the amount of any payments made from such portion of the trust after such date. [42 USC 1396p(d)(3)(B)(*ii*) (emphasis added).]

Subsection (c) provides:

> In order to meet the requirements of this subsection for purposes of section 1396a(a)(18) of this title, the State plan must provide that if an *institutionalized individual* or the spouse of such an individual (or, at the option of a State, a noninstitutionalized individual or the spouse of such an individual) *disposes of assets for less than fair market value* on or after the look-back date specified in subparagraph (B)(i), *the individual is ineligible for medical assistance for services* described in subparagraph (C)(i) (or, in the case of a noninstitutionalized individual, for the services described in subparagraph (C)(ii)) during the period beginning on the date specified in subparagraph (D) and equal to the number of months specified in subparagraph (E). [42 USC 1396p(c)(1)(A) (emphasis added).]

The look-back period for trust transfers is 60 months, 42 USC 1396p(c)(1)(B)(*i*), and there is no dispute that petitioner's transfers fell within this time frame. "Congress's imposition of a penalty for the disposal of assets or income for less than fair market value during the look-back period is intended to maximize the resources for Medicaid for those truly in need." *Mackey*, 289 Mich App at 696 (quotation marks and citation omitted). We have previously noted, however, that "Medicaid contains loopholes permitting transfers that are inconsistent with the goals of that legislation" and that courts should enforce the law as written and not based on the general intent of Congress. *Id*. at 698.

Petitioner's sole position is that the divestment penalty was essentially abolished by *Hegadorn*. We disagree. As *Hegadorn* explicitly stated, "The main issue in this appeal is whether assets making up the principal of an irrevocable SBO trust *are countable assets* for the purpose of determining an institutionalized spouse's *initial eligibility* for Medicaid." *Hegadorn*, 503 Mich at 249 (emphasis added). *Hegadorn* involved three consolidated cases, each with an SBO trust, which is a "solely for the benefit of" trust, and elderly individuals who applied for Medicaid benefits for long-term care in nursing facilities. See *id*. at 237-238. The SBO trusts were created shortly before applying for Medicaid benefits. *Id*. at 238. The respondent "determined that the entire value of the principal of each SBO trust was a countable asset for the purpose of determining each institutionalized spouse's eligibility for Medicaid benefits." *Id*. 238-239. Accordingly, the respondent "concluded that each institutionalized spouse did not show the requisite financial need because the value of the trust assets put their countable resources above the monetary threshold, and it denied each application." *Id*. at 239. The ALJ affirmed these decisions, the circuit court reversed each decision, and we reinstated the original denials. See *id*.

Our Supreme Court reversed this Court and held that federal law did not "automatically make[] marital assets placed in an irrevocable trust for the sole benefit of a community spouse countable assets for the purpose of an institutionalized spouse's initial eligibility determination." *Id*. at 269-270. The Court explained that, for such assets to be countable, there must be circumstances "under which the trust could make a payment to or for the benefit of the institutionalized spouse." *Id*. at 270. The Court reversed and remanded "for any additional administrative proceedings necessary to evaluate the legal validity of the Department's decision to deny each plaintiff's Medicaid application." *Id*. In a footnote, the Court observed that "[a]s the Department has stated, divestment penalties are not at issue in this appeal." *Id*. at 259 n 18.

Therefore, contrary to petitioner's contentions, *Hegadorn* did not address the divestment penalty because that issue was not raised. Rather, the decision involved whether the assets transferred to the SBO trusts were automatically *countable*, and the Court held that they were not. The present case, in contrast, did not involve whether the Trust's assets were countable because the parties did not ever dispute whether its assets were countable. Rather, the sole issue in the present case was, and is, whether the divestment penalty applied. And petitioner's only argument in this regard is that *Hegadorn* "effectively removes the divestment analysis as a basis for effectively denying benefits." As explained, petitioner's attempts to apply *Hegadorn* in such a manner are misplaced. *Hegadorn* is factually distinguishable and did not address, let alone abolish, the divestment penalty within 42 USC 1396p.

In support of her contention, petitioner points to a concurring opinion by CHIEF JUSTICE MCCORMACK. But, that concurrence actually preponderates against petitioner. The concurrence opined:

> But I also believe that the plaintiffs' transfer of assets into the trusts triggers Medicaid's divestment rules. *This issue has not been presented here, for understandable procedural reasons*. I believe such a discussion is necessary, however, as a caution. If I am correct, then the plaintiffs' overall planning strategy would be undermined: although they would be able to satisfy Medicaid's threshold resource test, *the plaintiffs would be disqualified from receiving Medicaid benefits for a time period calculated by reference to the value of the transferred assets*. And because their strategy involves irrevocable trusts, there is no way to unwind the transfer. In short, the majority opinion should not be interpreted as permitting a married Medicaid applicant to shelter and preserve any amount of wealth without restriction, and then immediately receive financial assistance as if she did not have it. [*Hegadorn*, 503 Mich at 270-271 (MCCORMACK, C.J., concurring) (emphasis added).]

Concurring opinions are not binding. See *Salinas v Genesys Health Sys*, 263 Mich App 315, 318 n 3; 688 NW2d 112 (2004). Regardless, the concurrence does *not* suggest that the Court was abolishing the divestment penalty; rather, the CHIEF JUSTICE warned the plaintiffs—and other similarly situated individuals—of the potential application of the divestment penalty. The concurrence explained that the penalty could pose dangers for individuals who make irrevocable transfers to trusts in an attempt to qualify for Medicaid. Accordingly, the concurrence preponderates *against* petitioner's argument that the divestment penalty was abolished because it acts as a warning that such a penalty may be applicable.

Petitioner counters that, because the Court could have applied the divestment penalty, the failure to do so constituted an abolishment of the penalty. Petitioner provides no legal authority in support of this assertion. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (quotation marks and citation omitted). When "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Id.* (quotation marks and citation omitted).

Thus, for these reasons, petitioner has failed to demonstrate that she is entitled to relief.[3]

III. CONCLUSION

The circuit court correctly affirmed the ALJ. We affirm.

/s/ Michael J. Riordan
/s/ Anica Letica
/s/ Stephen L. Borrello

---

[3] In any event, we doubt that a state court, or the Legislature, could supersede the federal Medicaid mandate of 42 USC 1396p, which requires a divestment penalty in certain cases.