CAWOOD v RAINBOW REHABILITATION CENTERS, INC

Docket No. 263146. Submitted November 8, 2005, at Detroit. Decided December 1, 2005, at 9:00 a.m.

Elaine and Thomas J. Cawood, as conservators of the estate of their legally incapacitated daughter, Jennifer Cawood, brought an action in the Washtenaw Circuit Court against Rainbow Rehabilitation Centers, Inc., and four of its employees, seeking tort damages relating to a sexual encounter between an employee of Rainbow and Jennifer, a patient in one of Rainbow's long-term health facilities for persons with brain injuries. Plaintiffs claimed vicarious and direct liability by Rainbow. The court, Timothy P. Connors, J., granted summary disposition for Rainbow. The plaintiffs appealed.

The Court of Appeals *held*:

1. The circuit court correctly determined that Rainbow could not be held vicariously liable for the intentional tort of its employee. An employer is generally not responsible for an intentional tort committed by its employee acting outside the scope of employment. There may be an exception to the general rule of no vicarious liability for the employer for intentional torts of employees. That exception, 1 Restatement Agency, 2d, § 219(2)(d), would provide for vicarious liability where the tortfeasor was aided in accomplishing the tort by the existence of the agency relationship. The exception would apply where the agency itself empowers the employee to commit the tortious conduct. The employee in this case was not empowered to engage in sexual conduct by the existence of the agency relationship, and he did not use his authority or any instrumentality entrusted to him to facilitate the inappropriate encounter. The existence of the employment relationship merely provided the employee with the opportunity to engage in the inappropriate conduct.

2. The circuit court did not err in summarily dismissing the claim of negligence by Rainbow with respect to staffing. The plaintiffs failed to establish that Rainbow had a duty to adequately staff the group home with more than one person or to have a female staff member on duty on the night in question. Rainbow met all the standards for staffing required under the applicable

licensing rules and industry practices. Nothing in the record indicates that Rainbow's staffing policies were inherently inadequate. The plaintiffs had consented to the provision of personal care for their daughter by staff members of the opposite sex.

3. While Rainbow may have been aware of the plaintiffs' daughter's decreased inhibitions, there was no evidence that Rainbow knew, or should have known, that its employee would take advantage of her. Absent such knowledge, Rainbow cannot be held liable for permitting the employee in question to work alone in the company of the plaintiffs' daughter.

Affirmed.

BORRELLO, J., dissenting, stated that, although the result reflects the current status of the general law of intentional torts, allowing long-term care facilities, such as Rainbow's, to escape liability and to avoid responsibility for torts committed by their employees against incapacitated patients whose health and safety has been entrusted to them, as in this case, is unacceptable, unjust, and unconscionable. There is a rationale for a heightened duty for such facilities to protect incapacitated patients inasmuch as incapacitated persons are at the mercy of their caregivers and are uniquely vulnerable to mistreatment in general and to sexual mistreatment in particular. A heightened duty to protect such patients is justified. That duty would be to assure that no harm comes to an incapacitated person as a result of an employee's tort. Once an individual is placed in a long-term care facility where that individual is wholly dependent on others for care, the facility must be held liable for any negligent act that causes a tort to be committed against the individual in its care, custody, and control. The trier of fact should be allowed to decide whether Rainbow was negligent in allowing a male to work alone on Jennifer's floor and by allowing a male to enter an incapacitated female patient's room at night.

MASTER AND SERVANT — INTENTIONAL TORTS BY EMPLOYEES — LIABILITY OF EMPLOYEES.

An employer generally is not liable for an intentional tort committed by an employee acting outside the scope of employment.

*Fieger, Fieger, Kenney & Johnson, P.C.* (by *Geoffrey Nels Fieger* and *Rebecca S. Walsh*), for Elaine and Thomas J. Cawood.

*Nemier Tolari Landry Mazzeo & Johnson, PC* (by
*Mark R. Johnson* and *Nancy Vayda Dembinski*), for
Rainbow Rehabilitation Centers, Inc.

Before: SMOLENSKI, P.J., and SCHUETTE and BORRELLO, JJ.

SMOLENSKI, P.J. Plaintiffs appeal as of right the circuit
court's opinion and order granting defendant's motion
for summary disposition under MCR 2.116(C)(10).[1] We
affirm. This appeal is being decided without oral argu-
ment pursuant to MCR 7.214(E).

This case arises from a sexual encounter between
plaintiffs' daughter, Jennifer, and defendant's employee
while Jennifer was a resident of one of the homes of
defendant, Rainbow Rehabilitation Centers, Inc., for
brain-injured individuals. After plaintiffs learned of the
sexual encounter,[2] they filed suit against defendant,
claiming vicarious and direct liability.[3] Defendant
moved for summary disposition, and the trial court
granted defendant's motion.

This Court reviews de novo the grant or denial of a
motion for summary disposition. *Dressel v Ameribank,*

---

[1] Defendant's motion was filed under MCR 2.116(C)(8) and (10).
Although the trial court did not specifically state the subsection under
which it was granting defendant's motion, because the trial court relied
on matters outside the pleadings, we treat the motion as though granted
pursuant to MCR 2.116(C)(10). *Driver v Hanley (After Remand),* 226
Mich App 558, 562; 575 NW2d 31 (1997).

[2] Defendant's employee claimed the sexual encounter was consensual.
Initially, Jennifer also claimed the encounter was consensual, but in her
deposition she stated that she no longer considered it consensual. After
reviewing the evidence, the trial court determined that there was a
factual question concerning whether Jennifer was capable of consenting.

[3] Plaintiffs also sued Harry Erkins, Jr., the employee who engaged in
inappropriate relations with Jennifer, in addition to several other em-
ployees of defendant. However, they are not parties to this appeal.

468 Mich 557, 561; 664 NW2d 151 (2003). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id.* Summary disposition is appropriate under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." When determining whether there is a genuine issue as to any material fact, the trial court must consider the evidence presented by the parties in the light most favorable to the party opposing the motion. *Smith v Globe Life Ins Co*, 460 Mich 446, 454-455; 597 NW2d 28 (1999), quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

Plaintiffs first argue that the trial court erroneously determined that defendant could not be held vicariously liable for the intentional tort of its employee. Consequently, plaintiffs further contend, summary disposition in favor of defendant on this issue was inappropriate. We disagree.

An employer is generally not responsible for an intentional tort "committed by its employee acting outside the scope of employment." *McClements v Ford Motor Co*, 473 Mich 373, 381; 702 NW2d 166 (2005). Plaintiffs do not contend that defendant's employee was acting within the scope of his employment when he had sexual relations with Jennifer.[4] Instead, plaintiffs argue that defendant may still be held vicariously liable for the actions of its employee under the exception set forth in 1 Restatement Agency, 2d, § 219(2)(d), p 481,

---

[4] Defendant actually had a policy explicitly prohibiting such conduct.

because, even though he acted outside the scope of his authority, he was aided in accomplishing the tort by the existence of the agency relationship.[5]

Relying in part on *Champion v Nation Wide Security, Inc*, 450 Mich 702, 712 n 6; 545 NW2d 596 (1996), plaintiffs contend that Michigan has adopted the exception set forth in § 219(2)(d) of the Restatement. However, this Court has noted that it is unclear whether the exception applies in cases involving tort actions. See *Salinas v Genesys Health Sys*, 263 Mich App 315; 318-320; 688 NW2d 112 (2004) (questioning whether *Champion* adopted the Restatement exception).[6] Nevertheless, we need not determine whether the Restatement exception has been or should be adopted because, even if the Restatement exception were applicable, under the facts of this case defendant would still be entitled to summary disposition.

"This Court has held that an employee is not 'aided in accomplishing the tort by the existence of the agency relation,' under the Restatement exception, just because of the 'mere fact that an employee's employment situation may offer an opportunity for tortious activity . . . .' " *Id.* at 321, quoting *Bozarth v Harper Creek Bd of Ed*, 94 Mich App 351, 355; 288 NW2d 424 (1979). Rather, the Restatement exception will only apply where "the agency itself empowers the employee to commit the tortious conduct." *Salinas, supra* at 323. In

---

[5] Pursuant to Restatement § 219(2), "[a] master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless . . . (d) the servant . . . was aided in accomplishing the tort by the existence of the agency relation."

[6] We recognize that the Court in *Zsigo v Hurley Med Ctr*, unpublished opinion per curiam of the Court of Appeals, issued May 4, 2004 (Docket No. 240155), lv gtd 472 Mich 899 (2005), concluded that Restatement § 219(2)(d) applies to actions in tort. However, because it is unpublished, *Zsigo* is not binding on this Court. MCR 7.215(C)(1).

this case, defendant's employee was not empowered to engage in the sexual conduct by the existence of the agency relationship. He did not use his authority or any instrumentality entrusted to him in order to facilitate the inappropriate encounter.[7] Instead, the existence of the employment relationship merely provided the employee with the opportunity to engage in the inappropriate conduct. Consequently, the Restatement exception would not apply.

Plaintiffs next argue that the trial court's grant of summary disposition was improper because defendant is directly liable to plaintiffs for its failure to adequately staff the group home. Again, we disagree.

"To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). However, there is nothing in the record to indicate that defendant's staffing policies were inherently inadequate. Defendant's expert opined in his affidavit that defendant met all the standards required for the adult foster care industry and, under the applicable licensing rules, the group home was appropriately staffed for the number of residents it served. He further noted that the licensing rules allow a staff member of the opposite sex to provide personal care with the consent of the resident. In the present case, the resident care agreement between the parties clearly indicates that plaintiffs consented to the provision of personal care to their

---

[7] Although *Zsigo* is not binding authority, we note that our conclusion is consistent with the Court's determination in that case that the tort committed by the employee must be accomplished by an instrumentality or through conduct associated with the employee's agency status. See *Zsigo, supra.*

daughter by staff members of the opposite sex. Finally, while plaintiffs apparently rely on the fact that defendant's original schedule for the group home provided for two staff members on the night in question, defendant's human resources director explained that this was an allocation, not a requirement. She also testified that the final schedule would be based on the needs of that particular home, not the human resources allocation in the original schedule. Hence, plaintiffs failed to establish that defendant had a duty to staff the group home with more than one person or to have a female staff member on duty on the night in question.

Finally, plaintiffs argue that, because defendant was aware of their daughter's compulsive sexual behavior, defendant should not have permitted the employee to have been on staff alone with Jennifer. While defendant may have been aware of plaintiffs' daughter's decreased inhibitions, there was no evidence that defendant knew, or should have known, that its employee would take advantage of plaintiffs' daughter's condition.[8] Absent such knowledge, defendant cannot be held liable for permitting the employee in question to work alone in the company of plaintiffs' daughter. See *McClements, supra* at 381, citing *Hersh v Kentfield Builders, Inc*, 385 Mich 410, 412; 189 NW2d 286 (1971).

Therefore, we conclude that plaintiffs failed to raise a genuine issue of material fact as to their claims against defendant. Consequently, the trial court properly granted summary disposition in favor of defendant.[9]

---

[8] Defendant conducted a background check on the employee in question. The employee had no criminal record, his references were favorable, and he successfully completed the requisite training and certification. Likewise, until this incident, his employment history with defendant was good.

[9] While we are sympathetic to the dissent's desire to provide enhanced protections for incapacitated persons, we do not believe that this Court is

Affirmed.

SCHUETTE, J., concurred.

BORRELLO, J. (*dissenting*). This case arises as a result of sexual contact perpetrated upon plaintiffs' daughter, Jennifer, by defendant's employee while Jennifer was a resident of one of defendant's long-term health care facilities for brain-injured individuals. It is not contested that plaintiffs placed their daughter in defendant's facility after she suffered a traumatic brain injury as a result of an automobile accident. Once plaintiffs discovered that the sexual contact had occurred, they filed suit against defendant, claiming direct and vicarious liability. Defendant moved for summary disposition, the trial court granted defendant's motion, and this Court has now affirmed. The majority's ruling therefore perpetuates the unacceptable practice of allowing long-term care facilities, such as defendant's, to escape liability and to avoid responsibility for torts committed by their employees against incapacitated patients whose health and safety has been entrusted to them. I dissent because plaintiffs should be entitled to recover against defendant on the basis of defendant's negligent failure to protect plaintiffs' daughter from being sexually assaulted by its employee when Jennifer was in defendant's sole care, custody, and control.

My brother jurists are correct in their assertion that, ignoring equity, the current status of the general law of intentional torts regarding vicarious liability is found in this Court's ruling in *Salinas v Genesys Health Sys*, 263 Mich App 315; 688 NW2d 112 (2004). The holding in

the appropriate body for effecting this change. Rather, we conclude that such a change is best left to the legislative process. We encourage the Legislature to thoroughly review this important public policy matter.

*Salinas* was predicated, at least in part, on my brother jurists' understanding of 1 Restatement Agency, 2d, § 219(2)(d), p 481. However, the principles set forth in the Restatement and this Court's opinion in *Salinas* fail to appropriately consider or address the nature and extent of the duty owed incapacitated persons who are patients in long-term health care facilities. Because such patients are wholly dependent on their caregivers to ensure their safety and to provide the most basic of services to sustain their very lives, there must be a heightened legal duty on the part of the caregiver to protect and guarantee the safety of its patients at all times.

When plaintiffs were forced to place their daughter into a long-term health care facility, they legitimately and reasonably expected that they were placing their daughter in an environment that was free from the threat of sexual molestation, and defendant owed Jennifer a duty to protect her from its employee's misconduct. The rationale for defendant's heightened duty to protect Jennifer is based on the nature of the relationship between patients like Jennifer and their caregivers. Incapacitated persons are at the mercy of their caregivers and are uniquely vulnerable to mistreatment in general and to sexual mistreatment in particular. Given the nature of the relationship between incapacitated persons and their caregivers, and given the extent to which such patients rely on their caregivers and are vulnerable to mistreatment, imposition of a heightened duty to protect such patients is justified. Moreover, given the high cost associated with residing in a long-term health care facility, individuals like plaintiffs are paying for such a heightened duty. Because the Restatement does not take into consideration the fact that incapacitated persons are uniquely vulnerable to any mistreatment by employees of a facility where they are

patients, the Restatement is wholly inapplicable to the facts of this case and other similar cases. I would hold that once an individual is placed in a long-term care facility where that individual is wholly dependent on others for care, the long-term care facility must be held liable for any negligent act that causes a tort to be committed against that incapacitated person who is in the facility's care, custody, and control. Only then will facilities such as defendant's be held responsible to assure that patients are not sexually molested or harmed in any manner by facility employees.

Thus, the legal duty owed incapacitated persons in a full-time, long-term health care facility must be a simple one: to assure that no harm comes to an incapacitated person as a result of its employee's tort. If, as in this case, an incapacitated person has been sexually molested, then it is up to the trier of fact to determine whether defendant breached its duty to protect the patient. Therefore, in this case, I would allow the trier of fact to decide whether defendant was negligent by allowing a male to work alone on Jennifer's floor and by allowing a male to enter an incapacitated female patient's room at night.

As the population rapidly ages, and the time for many to enter long-term care facilities approaches, the citizenry of this state should have a reasonable expectation that the civil laws of this state will protect them from sexual exploitation at the hands of a health care worker. However, such protections cannot be attained by blind adherence to outdated legal doctrines, which in this case has allowed defendant to escape any liability for the harm that was inflicted on an incapacitated person who was entrusted to its sole care. Because such a result is unjust and unconscionable, I dissent.