**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED JUNE 14, 2006

MARIAN T. ZSIGO,

 Plaintiff-Appellant,

v                                                                       No. 126984

HURLEY MEDICAL CENTER,

 Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

WEAVER, J.

 The general rule of respondeat superior is that an employer is not liable for the torts of its employees who act outside the scope of their employment.[1] This case raises the question whether this Court has adopted an exception to the respondeat superior rule of employer nonliability found in 1 Restatement Agency, 2d, § 219(2)(d). Under this exception, an employer would be liable for the torts of an employee acting outside the scope of his or her employment when the

---

[1] *Bradley v Stevens*, 329 Mich 556, 562; 46 NW2d 382 (1951), citing *Martin v Jones*, 302 Mich 355, 358; 4 NW2d 686 (1942).

employee is "aided in accomplishing" the tort "by the existence of the agency relation."[2] We hold that this Court has not previously adopted this exception, and we decline to adopt it.

We affirm in part the decision of the Court of Appeals, but for different reasons, reverse in part, and remand to the trial court for entry of a judgment of dismissal with prejudice.

FACTS

We adopt the facts as related by the Court of Appeals:

> This case arises from plaintiff's allegation that defendant's employee, a nursing assistant, sexually assaulted her in the emergency room at Hurley Medical Center on July 9, 1998. On that date, plaintiff was suffering a manic depressive episode when she was brought to defendant's emergency department by police and placed in a treatment room. Because plaintiff was belligerent, yelling, swearing, and kicking, she was placed in restraints and administered treatment. Eventually she was left alone in the room with a nursing assistant assigned to clean the room. Plaintiff begged him to release her from the restraints.

> While the aide was alone in the room with plaintiff, she continued to make sexually explicit remarks, enticing him to engage in sexual activity with her. According to plaintiff, she made these remarks "[a]t first to get him out of the room like the other nurses," but when he went to her, she "suddenly thought he was a very powerful person in the hospital" and "would release [her.]" The aide engaged, without resistance, in digital and oral sex with plaintiff, but he did not release her and left. One of the nurses came back into the room right after the aide left. Plaintiff did not say anything because she was scared.

> Plaintiff reported the incident three days later to a social worker, police were notified, and an investigation commenced.

_____

[2] 1 Restatement Agency, 2d, § 219(2)(d).

2

Plaintiff believed the employee might have been a janitor because he was cleaning and she provided a general description of the employee. Through the hospital's efforts, the nursing assistant was identified approximately three months later.[3]

Plaintiff brought a complaint against defendant Hurley Medical Center, alleging assault, battery, and intentional infliction of emotional distress.[4] The trial court denied summary disposition on these counts, finding that there was a question of fact with regard to whether Powell's agency relationship with defendant aided Powell in committing the tortious acts against plaintiff.

At the close of plaintiff's case, defendant moved for a directed verdict, asserting that defendant could not be liable for the torts of an employee acting outside the scope of his employment. Plaintiff, relying on this Court's opinion in *Champion v Nation Wide Security, Inc,*[5] argued that defendant was liable under the "aided by the agency" relationship exception to respondeat superior liability. The trial court denied defendant's motion. The jury rendered a verdict for plaintiff in the amount of $750,000 in past damages and $500,000 in future damages. After

---

[3] *Zsigo v Hurley Medical Ctr,* unpublished opinion per curiam of the Court of Appeals, issued May 4, 2004 (Docket No. 240155), slip op at 1-2. Lorenzo Powell pleaded no contest to a charge of attempted assault with intent to do great bodily harm less than murder, MCL 750.84. He was sentenced to five years' probation.

[4] Plaintiff had also alleged that defendant was negligent in hiring Powell, and that defendant had breached its duty of providing safe treatment and monitoring of a vulnerable patient. Defendant filed a motion for summary disposition and plaintiff stipulated that the negligence counts be dismissed.

[5] 450 Mich 702, 712 n 6; 545 NW2d 596 (1996).

reducing the verdict to its present value, the trial court entered a judgment in favor of plaintiff in the amount of $1,147,247.42.

Defendant appealed, and the Court of Appeals, in an unpublished decision, reversed and remanded the case for entry of a judgment of dismissal, holding that the trial court erred in denying defendant's motions for summary disposition and a directed verdict because plaintiff failed to present a material question of fact regarding defendant's liability under the doctrine of respondeat superior.[6] The Court of Appeals denied plaintiff's motion for reconsideration. Plaintiff sought leave to appeal, and we granted the application.[7]

## STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition.[8] Summary disposition may be granted pursuant to MCR 2.116(C)(10) when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact," and the moving party is entitled to judgment as a matter of law.[9] When reviewing a motion for summary disposition, "a trial court

---

[6] *Zsigo v Hurley Medical Ctr,* unpublished opinion per curiam of the Court of Appeals, issued May, 4, 2004 (Docket No. 240155).

[7] 472 Mich 899 (2005).

[8] *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998).

[9] MCR 2.116(C)(10).

4

considers affidavits, pleadings, depositions, admissions, and other evidence . . . in the light most favorable to the party opposing the motion."[10]

When reviewing a trial court's decision on a motion for a directed verdict, the standard of review is de novo and the reviewing court must consider the evidence in the light most favorable to the nonmoving party.[11]

## ANALYSIS

Under the doctrine of respondeat superior, the general rule is that an employer is not liable for the torts intentionally or recklessly committed by an employee when those torts are beyond the scope of the employer's business.[12] 1 Restatement Agency, 2d, § 219(2) sets forth the general rule of respondeat superior and also lists certain exceptions to employer nonliability:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> (a) the master intended the conduct or the consequences, or
>
> (b) the master was negligent or reckless, or
>
> (c) the conduct violated a non-delegable duty of the master, or
>
> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was

---

[10] *Maiden v Rozwood,* 461 Mich 109, 120; 597 NW2d 817 (1999).

[11] *Elezovic v Ford Motor Co,* 472 Mich 408, 442; 697 NW2d 851 (2005)(Weaver, J., concurring in part and dissenting in part).

[12] *Bradley, supra* at 562.

aided in accomplishing the tort by the existence of the agency relation.[13]

The question in this case is whether Michigan recognizes the fourth exception, § 219(2)(d), to the doctrine of respondeat superior nonliability. Plaintiff argues that Michigan has adopted, or should now adopt, the fourth exception to the respondeat superior nonliability rule. Section 219(2)(d) provides an exception to employer nonliability when a plaintiff can show that he or she relied on the apparent authority of the employee, or that the employee was aided in harming the plaintiff by the existence of the agency relationship between the employee and the employer. Section 219(2)(d) and the commentary on that section establish that this exception to employer nonliability applies primarily to cases involving misrepresentation and deceit, for example when a store manager is able to cheat store customers because of his or her position as store manager for the owner.[14]

Section 219(2)(d) was first mentioned by this Court in *McCann v Michigan*,[15] a case in which this Court issued four separate opinions, none of which received enough concurrences to constitute a majority opinion. A majority of this Court, however, declined to adopt the exception. Consequently, this Court did not adopt § 219(2)(d) in *McCann*.

[13] 1 Restatement Agency, 2d, § 219(2).

[14] *Id.*, § 219 (2)(d), comment on subsection 2.

[15] 398 Mich 65; 247 NW2d 521 (1976).

Nevertheless, several appellate court decisions have cited the *McCann* plurality's reference to § 219(2)(d) in subsequent tort actions.[16] After noting such multiple references, the Court of Appeals panel below concluded that the Michigan Supreme Court had adopted § 219(2)(d) in *Champion, supra*.

In *Champion, supra,* the plaintiff was raped by her supervisor and sought to impose liability on their employer for quid pro quo sexual harassment under the Michigan Civil Rights Act, MCL 37.2103(i). The employer attempted to avoid liability under the Civil Rights Act on the theory that the employer did not authorize the supervisor to rape his subordinate. Calling the employer's "construction of agency principles . . . far too narrow," the Court in *Champion, supra* at 712, cited Restatement Agency, 2d, § 219(2)(d) in a footnote.[17] *Champion* did not elaborate on this citation in reaching this conclusion.

---

[16] See *Zsigo v Hurley, supra*, slip op at 3 ( "Our Supreme Court in *McCann v Michigan,* 398 Mich 65, 71; 247 NW2d 521 [1976] recited the general principle and introduced The Restatement of Agency § 219 [2][d]. . . ."); *Salinas v Genesys Health Sys,* 263 Mich App 315, 318; 688 NW2d 112 (2004) ("In some jurisdictions, courts have recognized an exception to that general principle where the employee 'was aided in accomplishing the tort by the existence of the agency relation.' See 1 Restatement Agency, 2d, § 219[2][d]. . . ."); *Elezovic v Ford Motor Co,* 259 Mich App 187, 212; 673 NW2d 776 (2003)(Kelly, J., concurring), rev'd in part on other grounds *Elezovic v Ford Motor Co,* 472 Mich 408 (2005)(" The employer is also liable for the torts of his employee if '"the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation,"'" *McCann v Michigan*, 398 Mich 65, 71; 247 NW2d 521 [1976]. . . .) (citation omitted).

[17] *Champion,* 450 Mich at 712 n 6.

The reference to "Restatement Agency, 2d, § 219(2)(d)" in footnote six of *Champion* may have contributed to appellate court confusion about whether this Court adopted the aided by the agency exception to employer nonliability under the doctrine of respondeat superior.[18] We now clarify that the reference to § 219(2)(d) in *Champion, supra,* was made only in passing and on the basis of the very distinct facts of that civil rights matter.[19] We did not, by that reference, adopt

---

[18] While the *Zsigo* panel of the Court of Appeals held that this Court had adopted § 219(2)(d) by the reference in footnote 6 of *Champion,* the Court of Appeals in *Salinas v Genesys Health Sys,* 263 Mich App 315, 320; 688 NW2d 112 (2004), held otherwise:

> Further, we question whether *Champion* generally "adopted" the Restatement exception to the usual rule that an employer cannot be held liable for torts intentionally committed by an employee. The only mention of the Restatement exception was made in passing in a footnote. In the course of rejecting the defendant's "construction of agency principles [as] far too narrow," the Court made a "see" reference to the Restatement exception. [*Champion, supra*] at 712 n 6. We are unconvinced that this constituted an adoption of the Restatement exception, especially for cases like the present one involving tort actions not at issue in *Champion*.

[19] The dissent contends that the *Champion* Court implicitly adopted § 219(2)(d) and did not limit its application. We note, to the contrary, that the *Champion* holding was carefully crafted to apply only in the context of quid pro quo sexual harassment under MCL 37.2103(i). Specifically, the Court stated:

> In this case, we must decide whether an employer is liable for quid pro quo sexual harassment under *MCL 37.2103(i)*; MSA 3.548(103)(i) where one of its employed supervisors rapes a subordinate and thereby causes her constructive discharge. We hold that an employer is liable for such rapes where they are accomplished through the use of the supervisor's managerial powers. We believe that this result best effectuates the remedial purpose of

(continued…)

8

§ 219(2)(d). The Court of Appeals erred in finding that this Court affirmatively adopted the "aided by the agency relationship" exception to liability under the respondeat superior doctrine set forth in Restatement Agency, 2d, § 219(2). However, this case again presents us with the opportunity to adopt the exception.

In support of adopting § 219(2)(d), plaintiff cites a First Circuit Court of Appeals decision, *Costos v Coconut Island Corp.*[20] In *Costos,* the plaintiff was a guest at an inn and had retired for the night to her room. The inn manager obtained a key to the plaintiff's room, entered without the plaintiff's knowledge, and raped her. In finding the employer of the manager vicariously liable under § 219(2)(d), the court focused on the fact that as an agent of the inn, the manager was entrusted with the key to the plaintiff's room and knowledge of where to find her. Specifically, the key was the "instrumentality" that provided the manager with the opportunity to accomplish the rape.

---

(…continued)
    the Civil Rights Act, *MCL 37.2101* et seq.; MSA 3.548(101) *et seq.*
    [*Champion, supra* at 704-705 (emphasis added).]

    Thus, even in the context of quid pro quo sexual harassment, the sexual assault must be "accomplished through the use of the supervisor's managerial powers." *Id.* This limited exception clearly does not apply to the facts in this case.

    [20] 137 F3d 46 (CA 1, 1998).

*Costos* has been sharply criticized, and appears to have been adopted by only two other federal courts.[21] Indeed, *Costos* was later distinguished by the Supreme Judicial Court of Maine in *Mahar v StoneWood Transport.*[22] Maine's highest court not only clarified that it had not expressly adopted § 219(2)(d), but also questioned the application of the exception by the *Costos* court:

> At least one critic notes that the First Circuit's "instrumentality" analysis does not delineate the scope of "instrumentality." [Casenote: Costos v Coconut Island Corp: *Creating a vicarious liability catchall under the aided-by-agency-relation theory,* 73 U Colo L R 1099, 1112] ("By ignoring the properly narrow scope of aided-by-agency-relation liability, the *Costos* court eroded traditional principles of agency law."); *see Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 760, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998) ("In a sense, most workplace tortfeasors are aided in accomplishing their tortious objective by the employment relation: Proximity and regular contact afford a captive pool of potential victims.").[23]

Thus, the dissent's suggestion that the *Costos* instrumentality ruling has been generally accepted, *post* at 7, is incorrect.

---

[21] *LaRoche v Denny's Inc,* 62 F Supp 2d 1366, 1373 ( SD Fla, 1999)(the defendant restaurant was vicariously liable under § 219[2][d] for racial slur directed at customers by restaurant manager because manager used his position of authority as basis for denial of services to customers); *Del Amora v Metro Ford Sales & Service, Inc,* 206 F Supp 2d 947, 952 (ND Ill, 2002)(the defendant auto dealer was liable under § 219[2][d] where the defendant's employee was able to obtain the plaintiff's credit report under false pretenses because of the  employee's position at the dealership). Cf. *Primeaux v United States,* 181 F3d 876, 879 (CA 8, 1999)(declining to adopt Restatement exception and noting, "[t]o our knowledge, the Supreme Court of South Dakota has not had occasion to apply or even cite § 219[2][d] of the Restatement").

[22] 823 A2d 540 (2003).

[23] *Id.* at 546 n 6.

Courts have criticized § 219(2)(d) primarily because the exception swallows the rule and amounts to an imposition of strict liability upon employers.[24] Indeed, it is difficult to conceive of an instance when the exception would not apply because an employee, by virtue of his or her employment relationship with the employer is always "aided in accomplishing" the tort.[25] Because the exception is not tied to the scope of employment but, rather, to the existence of the employment relation itself, the exception strays too far from the rule of respondeat superior employer nonliability.

---

[24] See *Gary v Long,* 313 US App DC 403, 409; 59 F3d 1391 (1995); *Smith v Metropolitan School Dist Perry Twp,* 128 F3d 1014, 1029 (CA 7, 1997).

[25] For this reason, the Court of Appeals, in *Cawood v Rainbow Rehab Ctr,* 269 Mich App 116; 711 NW2d 754 (2005), wisely rejected the application of the exception in a case involving sexual assault by a nurse of a patient in a rehabilitation center. The panel succinctly reasoned:

> "This Court has held that an employee is not 'aided in accomplishing the tort by the existence of the agency relation,' under the Restatement exception, just because of the 'mere fact that an employee's employment situation may offer an opportunity for tortious activity . . . .'" [*Salinas v Genesys Health Sys*, 263 Mich App 315, 321; 688 NW2d 112 (2004)] quoting *Bozarth v Harper Creek Bd of Ed*, 94 Mich App 351, 355; 288 NW2d 424 (1979). Rather, the Restatement exception will only apply where "the agency itself empowers the employee to commit the tortious conduct." *Salinas, supra* at 323. In this case, defendant's employee was not empowered to engage in the sexual conduct by the existence of the agency relationship. He did not use his authority or any instrumentality entrusted to him in order to facilitate the inappropriate encounter. Instead, the existence of the employment relationship merely provided the employee with the opportunity to engage in the inappropriate conduct. Consequently, the Restatement exception would not apply. [*Cawood, supra* at 120-121.]

11

Because we recognize that were we to adopt the exception we would potentially be subjecting employers to strict liability, we decline to do so. We further note that, employers will continue to be subject to liability for their negligence in hiring, training, and supervising their employees.[26] The dissent contends that these other causes of action available to plaintiffs will not provide protection to a plaintiff who is injured when an "employer does not have knowledge that an employee may misuse granted authority."[27] Yet, the dissent fails to recognize that were this Court to impose liability on an employer under these very circumstances, we would in fact be subjecting the employer to strict liability. If the dissent believes that an employer's prior knowledge of an employee's propensity for bad acts is required to impose liability, then the only basis for employer liability based on an employee's unknown propensities would be strict liability.

Given the danger of applying such a broad exception to respondeat superior employer nonliability because employers may be subject to strict liability, courts that have applied the exception have done so primarily in sexual harassment/discrimination cases on the basis that an employer is vicariously liable

---

[26] Plaintiff's complaint in fact included a count of negligent hiring, a count that she ultimately stipulated to dismiss after summary disposition motions were argued before the trial court.

[27] *Post* at 6 n 6.

when a supervisory employee uses his agency position to sexually harass an employee.[28]

One court that chose to apply the exception outside the sexual harassment employment realm was the Vermont Supreme Court when, in *Doe v Forrest,*[29] it applied § 219(2)(d) in a case where a police officer sexually assaulted a female

---

[28] *Veco, Inc v Rosebrock*, 970 P2d 906 (Alas, 1999) (Alaska Supreme Court held vicarious liability may be imposed when an employee is aided in accomplishing a tort by the employee's position with the employer, but an employer's vicarious liability for punitive damages is limited to acts by managerial employees while acting within the scope of their employment); *Entrot v BASF Corp*, 359 NJ Super 162; 819 A2d 447 (2003) (New Jersey Superior Court held an employer vicariously liable for a supervisor's conduct outside the scope of employment when the supervisor was aided in the commission of the harassment by the agency relationship); *State v Schallock*, 189 Ariz 250 , 262; 941 P2d 1275 (1997) (Arizona Supreme Court held "[u]nder the common law of agency, a supervisor's use of the actual or apparent authority of his position—power conferred by the employer—'gives rise to [the employer's] liability under a theory of respondeat superior.' *Nichols* [ *v Frank,* 42 F3d 503, 514 (CA 9, 1994)], citing RESTATEMENT § 219(2)(d). . ..") See, also, *Burlington Industries, Inc v Ellerth*, 524 US 742; 118 S Ct 2257; 141 L Ed 2d 633 (1998), and *Faragher v Boca Raton,* 524 US 775; 118 S Ct 2275; 141 L Ed 2d 662 (1998*)*.

[29] 176 Vt 476; 853 A2d 48 (2004).  See also *Mary M v City of Los Angeles*, 54 Cal 3d 202; 814 P2d 1341 (1991)(California Supreme Court held that when a police officer on duty misuses his official authority by raping a woman whom he has detained, the public entity that employs him can be held vicariously liable); *Nazareth v Herndon Ambulance Service, Inc,* 467 So 2d 1076 (Fla App, 1985)(Florida Court of Appeals acknowledged state's adoption of Restatement 2d, § 219 [2][d] in fraud case); *Industrial Ins Co of New Jersey v First Nat Bank of Miami*, 57 So 2d 23 (1952).  But, see, *Bowman v State*, 10 AD3d 315; 781 NYS2d 103 (2004)(New York Supreme Court declined to adopt § 219[2][d] noting that "'liability premised on apparent authority [is] usually raised in a business or contractual dispute context. . . .'") (citation omitted); *Olson v Connerly*, 156 Wis 2d 488; 457 NW2d 479 (1990) (Wisconsin Supreme Court declined to apply § 219[2][d] in scope of employment case where it did not appear that employee was actuated, at least in part, by a purpose to serve the employer).

cashier at a convenience store. The Court held that the sheriff was vicariously liable because his deputy used his agency position to commit a sexual assault while on duty.

The dissent asserts, *post* at 11, that this Court has the option of applying the exception in the same tailored manner as demonstrated by the Vermont Supreme Court in *Doe v Forrest.* Specifically, that court cited *Faragher v Boca Raton*[30] as the basis for extending § 219(2)(d) beyond the realm of sexual harassment in the employment setting. According to the dissent, there are three balancing factors from *Faragher* that courts can consider when applying § 219(2)(d).[31] However, the dissent ignores the very specific context in which those factors were applied, namely to a *supervisor-employee relationship*. The actual language from *Faragher* is not broadly worded, but is in fact precisely tailored to the unique circumstances of a sexual harassment suit in an employment context.

As the dissenting justices in *Doe v Forrest* noted, the *Faragher* Court applied the exception in order to promote the policies of Title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq*. Given the *Faragher* Court's limited

---

[30] 524 US 742; 118 S Ct 2257; 141 L Ed 2d 662 (1998).

[31] The dissent lists them as:

(1) the opportunity created by the relationship, (2) the powerlessness of the victim to resist the perpetrator and prevent the unwanted contact, and (3) the opportunity to prevent and guard against the conduct. [*Post* at 10, citing *Doe, supra* at 491.]

14

application of the exception, the dissenting justices were critical of the majority's extension of § 219(2)(d) to factually distinct scenarios:

> "[T]he majority's analysis and conclusion are fundamentally flawed. First, as noted, the high court never intended for its decisions in *Faragher* and *Ellerth*[32] to have any influence on the development of common-law agency principles or the application of § 219 (2)(d) outside the specific context of Title VII.[33]

In concluding that the application of the exception to the facts of that particular case was too broad, the dissenting justices noted:

> [T]he majority has created a threat of vicarious liability that knows no borders. While the majority limits its holding to sexual assaults committed by "on-duty law enforcement officers," ante, at 48, the standard that it articulates applies to a broad range of employees whose duties grant them unique access to and authority over others, such as teachers, physicians, nurses, therapists, probation officers, and correctional officers, to name but a few. As the trial court here aptly observed, the Court's interpretation could virtually "eviscerate[] the general scope of employment rule." [*Id.* at 505 (Skoglund, J., dissenting, joined by Amestoy, C.J.).]

The Vermont dissenting justices then aptly noted:

> Like the finding of a duty of care in negligence law, the imposition of vicarious liability under agency principles flows not from the rote application of rules, but from a considered policy judgment that it is fair and reasonable to hold an employer liable for the harmful actions of its employee. As Justice Souter, writing for the United States Supreme Court in *Faragher v. City of Boca Raton,* 524 U.S. 775, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998*),* cogently observed: "In the instances in which there is a genuine question about the employer's responsibility for harmful conduct he did not in fact authorize, a holding that the conduct falls within the scope of employment ultimately expresses a conclusion not of fact but of law.

---

[32] *Burlington Industries, Inc v Ellerth, supra*.

[33] *Id.* at 509.

. . . The 'highly indefinite phrase' [vicarious liability] is 'devoid of meaning in itself' and is 'obviously no more than a bare formula to cover the unordered and unauthorized acts of the servant for which it is found to be expedient to charge the master with liability, as well as to exclude other acts for which it is not.'" *Id.* at 796 (quoting W. Keaton [sic] et al., Prosser and Keaton [sic] on Law of Torts § 502 (5th ed. 1984))[.][34]

We decline to follow the approach suggested by the Vermont Supreme Court majority in *Doe v Forrest*. As noted by the dissenting justices in that case, to do so would expose employers to the "threat of vicarious liability that knows no borders" for acts committed by employees that are clearly outside the scope of employment.[35] We recognize the danger of adopting an exception that essentially has no parameters and can be applied too broadly. Because we decline to adopt the exception, plaintiff has failed to establish that defendant Hurley Medical Center is vicariously liable for the sexual misconduct of its nursing assistant who was clearly not acting within the scope of his employment when he engaged in acts of sexual misconduct with plaintiff.

CONCLUSION

The Court of Appeals below correctly reversed the judgment of the trial court because plaintiff failed to establish that defendant is liable under the theory of respondeat superior. We therefore affirm that portion of the May 4, 2005,

---

[34] *Id.* at 506 (Skoglund, J., dissenting, joined by Amestoy, C.J.).

[35] *Id.* at 504.

16

opinion of the Court of Appeals and remand the matter to the trial court for entry of a judgment of dismissal with prejudice.

However, the Court of Appeals erred in concluding that this Court adopted Restatement Agency, 2d, § 219(2)(d) when we held in *Champion*, *supra*, that an employer was liable for quid pro quo sexual harassment under MCL 37.2103(i). That part of the judgment of the Court of Appeals is reversed. We decline to adopt the exception, which would create employer liability for the torts of an employee acting outside the scope of his or her employment when the employee is aided in accomplishing the tort by the existence of the agency relationship. Therefore, plaintiff's assertion that there is a question of fact regarding whether defendant's employee was aided by his agency relationship is moot.

Affirmed in part, reversed in part, and remanded.

Elizabeth A. Weaver
Clifford W. Taylor
Maura D. Corrigan
Stephen J. Markman

S T A T E   O F   M I C H I G A N

SUPREME COURT

MARIAN T. ZSIGO,

      Plaintiff-Appellant,

v                                                                                        No. 126984

HURLEY MEDICAL CENTER,

      Defendant-Appellee.

_____

YOUNG, J. (*concurring*).

I fully concur and join in the majority opinion. I write separately to question the validity of this Court's application of agency principles in *Champion v Nation Wide Security, Inc*, 450 Mich 702; 545 NW2d 596 (1996). In *Champion*, the supervisor engaged in quid pro quo sexual harassment by offering to "take care of" the plaintiff if she submitted to his sexual requests. However, when the plaintiff rebuffed his offer, the supervisor raped the plaintiff. This Court held that an employer is "strictly liable where the supervisor accomplishes the rape through the exercise of his supervisory power over the victim." *Id*. at 713-714. I fail to see how the supervisor's "supervisory power" aided him in sexually assaulting the plaintiff, where he accomplished the sexual assault through brute force *after* his attempt to use his supervisory powers had failed. A rape is a physical assault, and the supervisor in *Champion* was in no way "aided" by his managerial status in raping his subordinate.

I find it hard to square *Champion* with any conventional notion of agency, and it stands as an isolated, inexplicable exception in our Michigan Supreme Court jurisprudence.

Robert P. Young, Jr.

STATE OF MICHIGAN

SUPREME COURT

MARIAN T. ZSIGO,

     Plaintiff-Appellant,

v                                           No. 126984

HURLEY MEDICAL CENTER,

     Defendant-Appellee.

_____

KELLY, J. (*dissenting*).

We granted leave in this case to address two important questions: (1) whether this Court has adopted 1 Restatement Agency, 2d, § 219(2)(d) and, if not, (2) whether we should adopt it now.

Regarding the first question, this Court has not explicitly adopted § 219(2)(d). However, ten years ago in *Champion v Nation Wide Security Inc,*[1] we did implicitly adopt it. And regarding the second question, we should now explicitly adopt § 219(2)(d) and apply it to the facts of this case.

Accordingly, I would affirm the Court of Appeals use and recognition of § 219(2)(d) and reverse the trial court's grant of summary disposition. Summary disposition was improper because a factual question exists concerning whether the

---

[1] 450 Mich 702; 545 NW2d 596 (1996).

person who assaulted plaintiff was aided in committing the tort by his agency relationship with defendant.

### I. THIS COURT HAS IMPLICITLY ADOPTED § 219(2)(D)

As a general rule, an employer is not responsible for an employee's intentional or reckless torts that exceed the scope of employment. *Bradley v Stevens*, 329 Mich 556, 562; 46 NW2d 382 (1951). But § 219(2)(d) of the Restatement of Agency provides:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
>
> * * *
>
> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation. [1 Restatement Agency, 2d, § 219(2)(d).]

The exception essentially holds an employer liable for an employee's abuse of the authority that the employer granted.[2] Our concern in this case surrounds the exception's phrase "aided in accomplishing the tort by the existence of the agency relation" and whether this Court has previously adopted § 219(2)(d). *Id.*

---

[2] The majority claims that § 219(2)(d) is primarily applicable in cases of deceit or misrepresentation. I agree but do not believe that § 219(2)(d) is limited to those cases. The comments on § 219(2)(d) state that liability may exist where the servant is able to cause harm because of his or her position as an agent. The comments also provide that the enumeration of situations where § 219(2)(d) applies is not exhaustive, and the section applies where an agent causes physical harm. Therefore, I would not read § 219(2)(d) so narrowly as the majority does.

2

The majority holds that this Court did not adopt § 219(2)(d) in *Champion*. I agree that the magic words "we adopt the Restatement" do not appear. But I disagree that the Court's reference to § 219(2)(d) was merely in passing and that its application of the section was limited to the facts of that case.[3] Rather, a close reading of *Champion* suggests that the citation of § 219(2)(d) was part of the Court's rationale. Also, the citation of § 219(2)(d) was not expressly or implicitly limited to the facts presented in *Champion*, and its inclusion was designed to give guidance to the bench and bar.

Additionally, the citation of § 219(2)(d) was not just a cursory statement. This Court's citation of § 219(2)(d) in *Champion* was in response to one of the defendant's arguments in that case. The defendant-employer had asserted that it could not be responsible for its supervisor's rape of the plaintiff-employee because it never authorized the supervisor to rape the employee. *Champion, supra* at 712. In direct response, this Court stated, "This construction of agency principles is far too narrow." *Id.* The reader is then directed to § 219(2)(d) to determine how a court should determine the proper scope of agency principles.

---

[3] The majority also argues that the placement of the citation in a footnote should determine its precedential effect. This is a dubious argument, considering that footnotes do sometimes set the state of the law. Perhaps this is unfortunate, but it is true. See, e.g., *United States v Carolene Products Co*, 304 US 144, 153 n 4; 58 S Ct 778; 82 L Ed 1234 (1938), which laid the groundwork for heightened constitutional scrutiny of laws that discriminate on the basis of race and religion.

3

This Court further stated that, when an employer gives a supervisor certain authority over other employees, the employer must take responsibility to remedy any harm caused by the supervisor's misuse of the authority granted. *Id.,* citing *Henson v City of Dundee,* 682 F2d 897, 909 (CA 11, 1982). *Champion*'s citation of the *Henson* decision is especially noteworthy because *Henson* includes a discussion of § 219(2)(d):

> The common law rules of respondeat superior will not always be appropriate to suit the broad remedial purposes of Title VII[4] . . . In this case, however, the imposition of liability upon an employer for *quid pro quo* sexual harassment committed by supervisors appears to be in general agreement with common law principles. *See* Restatement (Second) of Agency § 219(2) (d) (master is liable for tort of his servant if the servant "was aided in accomplishing the tort by the existence of the agency relation"). [*Henson, supra* at 910 n 21.]

Given *Champion's* direction to readers to refer to the Restatement and *Champion's* citation of *Henson,* I do not believe that § 219(2)(d) was mentioned only in passing.[5]

Nonetheless, the majority seeks, by smoke and mirrors, to hide the fact that this Court appears to have implicitly adopted § 219(2)(d). Framing the issue as being whether this Court adopted § 219(2)(d) allows the majority to overrule

---

[4] Title VII is the section of the Civil Rights Act of 1964 that prohibits employment discrimination. 42 USC 2000e *et seq*.

[5] The majority argues that *Champion* was carefully crafted to apply only to quid pro quo sexual harassment cases. *Ante* at 8-9. I disagree. *Champion* was a sexual harassment case. But this Court's broad statement there that Michigan's agency principles are in line with § 219(2)(d) cannot fairly be read as an expression to limit § 219(2)(d) to sexual harassment cases.

4

*Champion* without the need to show that it was wrongly decided. Moreover, *Champion*'s validity was not questioned below. But even if this Court has not already adopted § 219(2)(d), we should explicitly adopt it now.

## II. THE COURT SHOULD NOW EXPLICITLY ADOPT § 219(2)(D)

Section 219(2)(d) correctly places responsibility on the employer to ensure that any grant of authority it makes to an employee is proper. The employer has the ultimate power to decide whom it will hire. The employer is responsible for determining what authority its employees are allowed. Therefore, it is the employer who should be responsible when its employees abuse the authority the employer gave them and the authority granted enables the employees to cause harm.

But in seeking to shield employers from liability, the majority instead places the burden of preventing an abuse of authority and the corresponding harm on people powerless to prevent it. This case presents a perfect example. Plaintiff was taken to the defendant hospital against her will. She was strapped to a bed. Defendant's employee then used his employer-given authority to enter plaintiff's room to sexually assault plaintiff. She had no power over who could enter her hospital room, and she could not prevent the assault. The entity with the power to protect plaintiff was the hospital. Yet, the majority leaves plaintiff to bear the full burden for the harm she was powerless to prevent.

However, § 219(2)(d) recognizes that the majority's approach of placing the burden on the victim is unworkable. It also recognizes that such an action

5

would create a situation where an employer has much less reason to monitor its employees' use of authority.[6] Therefore, this Court should explicitly adopt § 219(2)(d) and apply it to the facts of this case. Moreover, the majority's reasons for not adopting § 219(2)(d) are unpersuasive.

The majority's main reason for not embracing § 219(2)(d) is that the exception would swallow the rule. According to the majority, this would create "'vicarious liability that knows no borders' for acts committed by employees that are clearly outside the scope of employment." *Ante* at 16 (citation omitted). But this generic rationale misunderstands the scope of § 219(2)(d). It also avoids acknowledging that this Court can adopt a narrow interpretation of § 219(2)(d).

Indeed, the majority seems to accept without explanation that § 219(2)(d) must be broadly construed. This is understandable in light of the majority's calculated fear that adoption of § 219(2)(d) will open a Pandora's box. But this

---

[6] The majority believes that § 219(2)(d) is unnecessary in light of the existence of other tort remedies. However a review of case law involving negligent hiring, training, and supervising shows that the majority is incorrect. Negligence in hiring requires knowledge on the part of the employer that the employee has criminal tendencies. *Hersh v Kentfield Builders, Inc,* 385 Mich 410, 412; 189 NW2d 286 (1971). Negligent training is inapplicable here because there is no allegation that the nurse's aide was improperly trained. Negligent supervising, like negligent hiring and retention, requires knowledge on the part of the employer that special circumstances exist that could establish a duty to protect third persons. *Millross v Plum Hollow Golf Club*, 429 Mich 178, 196-197; 413 NW2d 17 (1987). This review of the torts listed by the majority shows that none adequately covers a situation where the employer does not have knowledge that an employee may misuse granted authority. Therefore, § 219(2)(d) is needed to protect victims like plaintiff.

6

rationale ignores the fact that the employer liability that § 219(2)(d) provides for is the tortious use of authority by an employee. Liability is not created by the employer-employee relationship alone. And § 219(2)(d) requires more than mere opportunity to commit the tort.[7] *Bozarth v Harper Creek Bd of Ed,* 94 Mich App 351, 355; 288 NW2d 424 (1979). Moreover, the majority's blanket assertion that adoption of § 219(2)(d) will create "virtual" strict liability ignores the fact that several other courts have interpreted the exception narrowly.

For example, courts have taken several approaches to interpreting the scope of § 219(2)(d). One is to adopt the instrumentality rule which is explained in *Costos v Coconut Island Corp,* 137 F3d 46 (CA 1, 1998). Another is to adopt a balancing approach as explained by the Supreme Court of Vermont in *Doe v Forrest,* 176 Vt 476; 853 A2d 48 (2004). Both seek to balance the scope of § 219(2)(d) so as not to impose strict liability based solely on the employer-employee relationship or on the mere opportunity to commit the tort.

With respect to the instrumentality approach, in *Costos, supra,* the United States Court of Appeals for the First Circuit interpreted the scope of § 219(2)(d). In that case, a hotel manager gained access to a guest's room and raped the guest. The court found that the owner and corporate manager of the hotel could be held liable for the rape. *Id.* at 50. The court reasoned:

---

[7] The majority's focus is misplaced. The focus is not on the employment relationship, but on the authority that the employer granted to the employee.

7

By virtue of his agency relationship with the defendants, as manager of the inn, [the manager] was entrusted with the keys to the rooms, including [the victim's] room, at the Bernard House. Because he was the manager of the inn, [he] knew exactly where to find [the victim]. The jury could find that [the manager] had responsibilities to be at the inn or to have others there late at night. In short, because he was the defendants' agent, [the manger] knew that [the victim] was staying at the Bernard House, he was able to find [the victim's] room late at night, he had the key to the room and used the key to unlock the door, slip into bed beside her as she slept, and rape her. [*Id*.]

Thus, the instrumentality approach requires that the tort be accomplished by an instrumentality or through conduct associated with the agency status. Accordingly, this interpretation in *Costos* reads § 219(2)(d) narrowly and balances interests so that employers do not become liable simply because an employer-employee relationship exists. In other words, the instrumentality approach to § 219(2)(d) does not result in strict liability for employers.

With respect to the second approach, the Supreme Court of Vermont in *Doe, supra,* explored the application of § 219(2)(d) to a sexual assault committed by a police officer while the officer was on duty. In response to the dissent's contention that unfathomable strict liability would result, the court explained that it was "sensitive to the concern expressed by the trial court that plaintiff's arguments could lead to a rule that makes a principal liable for all intentional torts of an agent in all circumstances." *Id.* at 491.

In addressing this concern, the Vermont court, *id*. at 488, turned to the United States Supreme Court decisions in *Burlington Industries, Inc v Ellerth,*[8] and *Faragher v City of Boca Raton,*[9] two sexual harassment cases brought under Title VII. In those cases, the United States Supreme Court concerned itself with the last phrase of § 219(2)(d) and rejected a narrow reading of its language.[10] *Doe, supra* at 489-490. As such, while observing that it was not strictly bound by those decisions, the *Doe* court viewed *Ellerth* and *Faragher* as strong persuasive authority and helpful to the proper application of § 219(2)(d). *Doe, supra* at 490.

Accordingly, in following the lead of the United States Supreme Court, the Vermont court in *Doe* reasoned that it is "important not to adopt too narrow an interpretation of the last clause of § 219(2)(d), *but it is equally important not to adopt too broad an interpretation.*" *Id.* at 491 (emphasis added). The court also reasoned that it should give appropriate deference to the policy reasons underlying the United States Supreme Court's decisions. It decided to apply those policy reasons in the context of an intentional sexual tort committed by a police officer while on duty.

As such, the Vermont court eventually determined that the three considerations noted in *Faragher* correctly balanced the scope of § 219(2)(d) and,

---

[8] 524 US 742; 118 S Ct 2257; 141 L Ed 2d 633 (1998).

[9] 524 US 775; 118 S Ct 2275; 141 L Ed 2d 662 (1998).

[10] In *Faragher,* the Court specifically rejected the proffered reading that the aid-in-accomplishing theory merely refined the apparent authority theory.

9

thus, adopted them as its own. The considerations are (1) the opportunity created by the relationship, (2) the powerlessness of the victim to resist the perpetrator and prevent the unwanted contact, and (3) the opportunity to prevent and guard against the conduct. *Id.* at 491.[11]

---

[11] The majority asserts that the Vermont Supreme Court in *Doe* incorrectly relied on these factors from *Faragher* because *Faragher* was limited to cases involving a supervisor-employee relationship. See *ante* at 14. In support of this assertion, the majority relies on the *Doe* dissent. But I find the *Doe* court's response to that dissent persuasive and fitting in this case. The *Doe* court observed:

In following the United States Supreme Court decisions, we reject the dissent's claim that the Supreme Court "never intended for its decisions . . . to have any influence on the development of common-law agency principles or the application of § 219(2)(d) outside the specific context of Title VII." . . . The Supreme Court applied the Restatement of Agency because it found that "Congress wanted courts to look to agency principles for guidance" in deciding hostile environment sex discrimination cases under Title VII. . . . Thus, in [*Ellerth*, *supra* at 754], the Court noted that it was relying on "the general common law of agency." (Citation omitted). The Court noted that state court decisions could be "instructive," but they often relied upon federal decisions, *id*. at 755, and found the Restatement of Agency a useful starting point to find the general common law. *Id*. It went through the various sections of the Restatement (Second) of Agency and finally centered on § 219(2)(d) as the most useful. It then applied the "aided in the agency relation principle" of § 219(2)(d) to the situation before it. *Id*. at 760-65. . . . The analysis in [*Faragher*, *supra* at 801-802], is similar, and as noted in the text, the Court resolved a dispute over the meaning of the language of § 219(2)(d), holding that the "aided-by-agency-relation principle" was not merely a refinement of apparent authority.

It is, of course, the nature of the common law that every appellate decision represents the development of the common law, and nothing in the Supreme Court decisions suggests they are not an

(continued…)

10

According to the Vermont court, when all three factors weigh in favor of the victim, liability may be imposed on the employer under the exception set forth in § 219(2)(d). Thus, it is clear that the Vermont court's approach does not result in strict liability and also serves to protect those who cannot protect themselves.

I agree with the Vermont court that § 219(2)(d) as interpreted by the United States Supreme Court in *Faragher, supra,* reflects the correct balance between reading § 219(2)(d) too narrowly and reading it too broadly. I would adopt its approach for Michigan law.[12] Again, strict liability does not result from this application of § 219(2)(d). Only in those cases where (1) the opportunity created

_____

(…continued)

> integral part of that process. Indeed, the resolution of the dispute over the meaning of § 219(2)(d) in *Faragher* is exactly the kind of decision that best defines and develops the common law. No common-law court engaged in this process, and certainly not the highest court of this country, would expect that a common-law decision on one set of facts would have no influence on future decisions applying the same legal principle to a different factual scenario. [*Doe*, *supra* at 490 n 3.]

In any event, the reasons underlying the *Faragher* Court's use of these factors applies with equal force here even though there is not a supervisor-employee relationship. Therefore, extension of those factors is logical and appropriate. For example, just like a supervisor (*Faragher*) and a police office (*Doe*), a hospital aide has unique access to a patient who is depending on the aide for care. The patient is often defenseless. Imposing liability on the hospital may prevent recurrence of an assault by creating an incentive for vigilance. Accordingly, I disagree with the majority's assertion that I am ignoring the specific context in which *Faragher* announced and applied the factors noted above. Rather, the context and underlying policy considerations are largely the same.

[12] I do not reject out of hand the instrumentality approach adopted by the *Costos* court, but find the balancing approach in *Doe* more compelling.

by the relationship, (2) the powerlessness of the victim to resist the perpetrator and prevent the unwanted contact, *and* (3) the opportunity to prevent and guard against the conduct are properly balanced will a defendant be held vicariously liable. *Id.* at 491.

Still, the majority prefers to ignore or discount the fact that this Court has the power to adopt an interpretation of § 219(2)(d) that does not cause strict liability. This Court could adopt an interpretation that encompasses its previous statement that

> when an employer gives its supervisors certain authority over other employees, it must also accept responsibility to remedy the harm caused by the supervisors' unlawful exercise of that authority. [*Champion, supra* at 712.]

In my view, the most disturbing aspect of the majority's refusal to adopt or apply § 219(2)(d) is that its rationale is based solely on an unproven hypothesis. The majority reasons that adoption of the Restatement could lead to "virtual" strict liability for employers. But this is simply an unproven assertion designed to cause fear. More importantly, the majority does not acknowledge that it can interpret § 219(2)(d) to fairly balance the interests that § 219(2)(d) seeks to protect, just as other courts have done. Instead, it merely states that it refuses to do so because of its fear that strict liability would result. The majority is like a farmer holding a can of red paint saying, "I dare not paint my barn because the barnyard will become red."

12

Unlike the majority, I would carefully adopt and amend the common law to embrace the reasonable interpretation of § 219(2)(d) expressed in *Doe* and *Faragher*. The truth about § 219(2)(d) is that it functions as good public policy and as practical law when interpreted properly. In light of the discussion above, I am unpersuaded by the majority's rationale that boundless liability will result from a careful adoption of § 219(2)(d). The majority's rationale misunderstands the scope of § 219(2)(d) and fails to acknowledge this Court's ability to craft a rule that would properly balance the interests protected under § 219(2)(d). Therefore, had we not adopted it in the past, we should adopt § 219(2)(d) today, thereby placing the burden on the party most capable of preventing loss or injury. Moreover, I would apply that interpretation to this case.

Here, under the approach detailed above, a factual question exists whether his agency relationship assisted the nurse's aide in committing the tort. Powell's position in defendant's emergency room gave him the opportunity to sexually assault a restrained patient. It appears that plaintiff was powerless to prevent the unwanted contact because she was physically bound and was suffering from a manic episode. In general, patients are vulnerable and trust hospital staff and their care. Therefore, I would affirm the result of the decision of the Court of Appeals and remand this case to the trial court for further proceedings.

## III. CONCLUSION

I would find that this Court implicitly adopted § 219(2)(d) in *Champion.* And even if we did not adopt § 219(2)(d) before, we should adopt it now. We

should interpret the exception as did the Supreme Court of Vermont in *Doe, supra,* and apply it to the facts of this case.  Consequently, I dissent from the majority opinion.

I would affirm in part and reverse in part the decision of the Court of Appeals, and remand this case to the trial court for further proceedings.

Marilyn Kelly
Michael F. Cavanagh